CITY OF ROSEVILLE v LOCAL 1614, INTERNATIONAL
ASSOCIATION OF FIREFIGHTERS, AFL-CIO

1. LABOR RELATIONS—ARBITRATION AND AWARD—BASIS OF FINDINGS.

Under the public employment relations act an arbitration panel
shall base its findings in a dispute upon, *inter alia,* the lawful
authority of the employer, the interests and welfare of the
public, the financial ability of the unit of government to meet
the costs, situations of public and private employment in com-
parable communities, the overall compensation presently re-
ceived by the employees and benefits received, and such other
factors as are normally or traditionally taken into considera-
tion in the determination of wages, hours, and conditions of
employment through voluntary collective bargaining mediation,
fact-finding, arbitration or otherwise (MCLA 423.239).

2. LABOR RELATIONS—COLLECTIVE BARGAINING—SCOPE OF BARGAINING
—INSURANCE.

The collective bargaining provision of the public employment
relations act is patterned after similar provisions of the Na-
tional Labor Relations Act; thus the scope of bargaining under
the state act is like that under the NLRA, and insurance is a
mandatory subject for collective bargaining under the NLRA.

3. LABOR RELATIONS—ARBITRATION AND AWARD—SUBJECT OF BAR-
GAINING—HEALTH INSURANCE—IDENTITY OF CARRIER.

An arbitration panel had proper jurisdiction to select the carrier
from which health insurance was to be secured where the
identity of a health insurance carrier was a mandatory subject
of bargaining in a dispute between a city and its firefighters
union because that carrier was consistently the concern of the
firefighters union, that carrier cannot be separated from the
benefits, and the designation of a specific carrier falls within
"other terms and conditions of employment" and can be the
subject of a labor dispute.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur 2d, Labor and Labor Relations § 1401
[2, 3] 48 Am Jur 2d, Labor and Labor Relations §§ 233, 235, 284, 286.
[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 206, 244.

4. MUNICIPAL CORPORATIONS—CHARTERS—ORDINANCES—HEALTH IN-
   SURANCE—COMPETITIVE BIDDING.
   A comprehensive hospital service and care certificate is not a
   contract of insurance and thus is not property within the
   concerns of a controversy over its acquisition by a municipal
   employer for its employees; therefore, such acquisition was not
   subject to the provisions of a city charter and ordinance which
   required competitive bidding for purchases of property, certain
   designated contractual services, and rental, repair or mainte-
   nance of other city property.

Appeal from Macomb, George R. Deneweth, J.
Submitted Division 2 March 13, 1974, at Lansing.
(Docket No. 17204.) Decided May 30, 1974.

Complaint by the City of Roseville against Local
1614, International Association of Firefighters,
AFL-CIO, for a declaratory judgment that an arbi-
tration panel was without jurisdiction or exceeded
its jurisdiction in granting an award requiring the
city to purchase health insurance from a particu-
lar carrier. Judgment for defendant. Plaintiff ap-
peals. Affirmed.

*Dank, Peterson & Hay, P. C.,* for plaintiff.

*Bogus, Hennings & Kraska,* for defendant.

Before: HOLBROOK, P. J., and ALLEN and VAN
VALKENBURG,* JJ.

HOLBROOK, P. J. Plaintiff and defendant entered
into a collective bargaining agreement which was
silent as to the carrier from which health insur-
ance coverage was to be obtained. On this and
another issue the defendant instituted compulsory
arbitration proceedings, pursuant to MCLA

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

423.231 *et seq;* MSA 17.455(31) *et seq.,* in June of 1971.

Findings of fact, opinion and an order were issued by the arbitration panel in April 1972. On May 18, 1972, plaintiff instituted proceedings in circuit court seeking a determination that the arbitration panel was without or exceeded its jurisdiction in making the award, under MCLA 423.242; MSA 17.455(42). On April 11, 1973, the Honorable George R. Deneweth, circuit judge, upheld the grant of award requiring plaintiff to purchase health insurance, as contained in the labor contract, from Blue Cross-Blue Shield and issued an order in accord therewith on May 2, 1973.

On May 16, 1973, plaintiff filed a claim of appeal with this Court. On the twenty-sixth of that month, plaintiff moved for a stay of proceedings in circuit court. The stay was denied by the trial court on June 25, 1973. On August 13, 1973, an order enforcing the award was issued. Motions for stays were denied by this Court twice on July 20, 1973 and September 19, 1973, and by the Supreme Court on November 26, 1973 and January 3, 1974.

Of the two issues before the arbitration panel, the one presented to this Court is that involving the designation of a particular carrier for procurement of health insurance coverage. The plaintiff asserts: that the company from which health insurance is to be secured is not a valid and negotiable item within the purview of the public employment relations act; that the designation of a carrier is an administrative decision and not the subject of a labor dispute; that the provision of the city charter and the city ordinances do not conflict with the public employment relations act for the reason that the selection of the carrier is not

subject to arbitration; and that the award of the arbitrator was not a valid exercise of discretion.

MCLA 423.231; MSA 17.455(31) provides:

"It is the public policy of this state that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes, and to that end the provisions of this act, providing for compulsory arbitration, shall be liberally construed."

An arbitration panel's jurisdiction stems from the legislative grant over the subject matter. *Dearborn Fire Fighters Union Local #412, IAFF v Dearborn*, 42 Mich App 51, 53–54; 201 NW2d 650, 653 (1972), (concurring opinion of Judge O'HARA). When wage rates or other conditions of employment of a proposed new or amended agreement are in dispute, the arbitration panel shall base its findings, opinions and order upon, *inter alia,* the lawful authority of the employer, the interests and welfare of the public, the financial ability of the unit of government to meet the costs, situations of public and private employment in comparable communities, the over-all compensation presently received by the employees and benefits received, and such other factors as are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining mediation, fact-finding, arbitration or otherwise between parties in public service or private employment. MCLA 423.239; MSA 17.455(39).

MCLA 423.215; MSA 17.455(15) provides:

"A public employer shall bargain collectively with

the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, *to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party,* but such obligation does not compel either party to agree to a proposal or require the making of a concession." (Emphasis supplied.)

This section was undoubtedly patterned after § 8(d) of the National Labor Relations Act, 61 Stat 142 (1947); 29 USC 158(d). Thus, the scope of bargaining under the public employment relations act is like that under the NLRA and it is safe to assume that the Legislature expected that the Michigan courts would rely on legal precedents developed thereunder. *Detroit Police Officers Assn v Detroit,* 391 Mich 44; 214 NW2d 803 (1974).[1] See, also, *MERC v Reeths-Puffer Sch Dist,* 391 Mich 253; 215 NW2d 672 (1974).

Insurance is a mandatory subject for collective bargaining under the National Labor Relations Act. *NLRB v General Electric Co,* 418 F2d 736, 746 (CA 2, 1969). See *NLRB v General Motors Corp,* 179 F2d 221 (CA 2, 1950); *Inland Steel Co v NLRB,* 170 F2d 247; 12 ALR2d 240 (CA 7, 1948), *cert den* 336 US 960; 69 S Ct 887; 93 L Ed 1112 (1949). Health insurance coverage may be placed in the category of fringe benefits and fall under § 8(d) of

---

[1] In *Detroit Police Officers Assn v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), the Supreme Court held that residency requirements for Detroit police officers and changes in the police retirement plan were mandatory subjects of bargaining.

the National Labor Relations Act. *McLean v NLRB,* 333 F2d 84, 87 (CA 6, 1964).[2]

The question of whether health insurance coverage by a specific carrier may be designated by an arbitration panel is one of first impression in this jurisdiction. Further, its answer is unclear in the federal realm. In *Connecticut Light & Power Co v NLRB,* 476 F2d 1079, 1083 (CA 2, 1973), the sole question was whether the selection of an insurance carrier was a mandatory subject of bargaining within the meaning of § 8(d) of the National Labor Relations Act. The Court held that the benefits, coverage and administration of a plan were proper bargaining subjects, but that the company, having negotiated about those matters, was free to choose any carrier that would satisfy the company's agreement with the union. That Court was careful to note that "Our holding * * * should not be construed to mean that in all cases may the selection of a carrier be divorced from the elements of employee health insurance that traditionally have been held to be mandatory subjects of bargaining". The Court distinguished the case of *Bastian-Blessing, Div of Golconda Corp v NLRB,* 474 F2d 49 (CA 6, 1973).

In *Bastian-Blessing* health insurance benefits were held to be clearly mandatory subjects of bargaining. *NLRB v Scam Instrument Corp,* 394 F2d 884 (CA 7, 1968); *McLean, supra;* and *Inland Steel Co, supra,* were cited. *That Court sought a way to separate the carrier from the benefits and failed.* They found that the history of the bargaining relationship showed that bargaining on health insurance had been related to a contract of a specific insurance carrier. Under the facts of that

---

[2] As to insurance as a subject of bargaining, *see, generally,* 12 ALR2d 265, *Subjects of Collective Bargaining,* § 8, p 274.

case, the Court held that the naming of an insurance carrier for an employee group benefit plan was a mandatory subject of bargaining. The Court was, however, very careful to limit that holding specifically to the facts of that case.

In discussing *Bastian-Blessing,* the Second Circuit pointed to the interrelationship of the specific policy and company as compared with the union's undefined "dissatisfaction" with the administration of the policy in the *Connecticut Light & Power Co* case. The Court was reluctant to formulate a test for determining in which cases the identity of the insurance carrier vitally affects the terms and conditions of the employment. *Connecticut Light & Power,* pp 1082–1083. They said that in *Bastian-Blessing,* the Sixth Circuit had found a "sufficient interrelationship to require bargaining", whereas, in *Connecticut Light & Power Co,* the matters within the bargaining requirement had been the subject of negotiation between the company and the union without reference to the identity of the carrier.

In the present case, the identity of the insurance carrier, *i.e.,* Blue Cross-Blue Shield, was consistently the concern of the defendant. The plaintiff has argued that it was not adverse to securing coverage from Blue Cross-Blue Shield, but only after the bidding procedure of the city charter and ordinances was satisfied. The union made manifest its desire to specifically have the Blue Cross-Blue Shield coverage. Given this continuing reference to the identity of the carrier and the fact that we are unable to separate the carrier from the benefits,[3] we hold that there is a sufficient

---

[3] As the trial court said: "It goes without saying that the convenience of Blue Cross-Blue Shield at least in this locality is of special value to anyone covered thereunder."

Plaintiff's carrier since January 1, 1964, was North American

interrelationship to warrant holding that, in this case, the identity of the carrier was a mandatory subject of bargaining. In his opinion, Judge Deneweth said:

"[I]t is the opinion of this court that the matter of health insurance coverage is a valid and negotiable item within the purview of the Public Employee Relations Act *and in this case* would include the company from whom the policy is to be secured by the employer." (Emphasis supplied.)

We agree.

As the designation of a specific carrier, in this case, falls within "other terms and conditions of employment" it can indeed be the subject of a "labor dispute". See, for instance, 24 Words & Phrases, Labor Dispute, p 79 *et seq.* As such, the arbitration panel had proper jurisdiction.

The reluctance to use arbitration to resolve public employment disputes has been said to arise from three factors: (1) the traditional concern that there may be an unconstitutional delegation of authority; (2) that the availability of an arbitrator will discourage serious efforts to bargain collect-

Company for Life and Health Insurance. Its home office is in Chicago, Illinois. Because of a requirement by the plaintiff, North American set up an office for a special agent in Birmingham, Michigan. The company, at the time of arbitration, had four customers in the metropolitan Detroit area (of which the plaintiff was the largest). The company offers a broad range of insurance coverages, whereas Blue Cross-Blue Shield offers only health care insurance. In Macomb County (in which Roseville is located) and three surrounding counties, Blue Cross-Blue Shield, at the time of arbitration, insured over 1,000 groups like the defendant, i.e., groups of less than 150 employees. Unlike the commercial carrier, Blue Cross and Blue Shield are nonprofit organizations and each have on their Boards of Trustees representatives of the general public. Blue Cross has representatives from the hospital industry and Blue Shield has board members from the medical profession. The arbitration panel set out further differences, *e.g.,* differences in premium rate adjustment, reimbursement procedures, bases of premium rate, etc. These differences are not insubstantial and are inherently tied to the identities of the specific carriers.

ively; and, (3) that it may be undesirable to leave essentially political questions to one who is not directly responsible to the public. Comment, *Collective Bargaining for Public Employees and the Prevention of Strikes in the Public Sector,* 68 Mich L Rev 260, 281 (1969). In the present case, we feel that the plaintiff is mainly concerned with its perceived usurpation of administrative prerogative. In *Bd of Control of Eastern Mich Univ v Labor Mediation Bd,* 384 Mich 561, 567; 184 NW2d 921, 923 (1971), the Supreme Court held that the autonomy sought by the plaintiff in labor relations was unnecessary to maintain " 'the entire control and management of its [the University's] affairs and property' ". See *Weinberg v The Regents of Univ of Mich,* 97 Mich 246; 56 NW 605 (1893). Similarly, here we feel that the degree of autonomy sought by the plaintiff is unnecessary for the control and supervision of its affairs and property.

Section 13 of the Charter of the City of Roseville provides:

*"Purchases: personal property; purchasing agent; responsibility, duty; purchasing procedure; ordinance required.*—The council shall establish, by ordinance, the procedures for the purchase and sale of personal property for the city, under the direction of a purchasing department, which department shall be under the direction of the purchasing agent of the city. The purchasing agent shall be responsible and accountable to the city manager for the conduct of the purchasing department. *The ordinance shall provide the dollar limit within which purchases of personal property may be made without the necessity of securing competitive bids, and the dollar limit within which purchases may be made without the necessity of prior council approval. No purchase of personal property shall be made, unless a sufficient unencumbered appropriation balance is available therefor."* (Emphasis supplied.)

Pursuant to Section 13, Ordinance 440 of the city was adopted. In pertinent part, it provides:

"Section 2-209. *Competitive bidding required.*—All purchases of, and contracts for, supplies and contractual services, and all sales of personal property which has become obsolete and unusable, shall, except as specifically provided herein, be based wherever possible on competitive bids. (Ord. 440, Sec 9)

"Section 2-210. *Formal contract procedure.*—All supplies and contractual services, except as otherwise provided herein, when the estimated cost thereof shall exceed one thousand dollars ($1,000) shall be purchased by formal, written contract from the lowest responsible bidder, after due notice inviting proposals. All sales of personal property which has become obsolete and unusable, when the estimated value shall exceed one thousand dollars, ($1,000), shall be sold by formal written contract to the highest responsible bidder, after due notice inviting proposals in accordance with the following procedures.   *  *  *

"Section 2-202. *Definitions.* For the purposes of this ordinance, the following terms, phrases, words and their derivations shall have the meaning given herein. When not inconsistent with the context, words used in the present tense include the future, words in the singular number include the plural number. The word 'shall' is always mandatory and not merely directory.

"Section 2-202(3). 'Contractual services' shall mean and include all telephone, gas, water, electric light and power service; towel and cleaning service; leases for all grounds, buildings, office or other space required by the using agencies; and the rental, repair or maintenance of equipment, machinery and other city-owned personal property. The term shall not include professional and other contractual services which are in their nature unique and not subject to competition."

The trial court held that the charter provision required the city to pass an ordinance to place a limit on the dollar amount of purchases that the purchasing department could make without bids

and council approval, and that the provision did not restrict the purchasing power of the council, i.e., that it did not require the city to employ competitive bidding but only required the passing of an ordinance limiting the authority of the purchasing department. Judge Deneweth held that the ordinance provision was not binding on the city council and any attempt by the city to construe the ordinance which would deny city employees protection under the PERA was void.

As Justice SWAINSON said, in *Detroit Police Officers Assn v Detroit,* 391 Mich 44, 58; 214 NW2d 803, 810 (1974):

"The enactment of an ordinance, however, despite its validity and compelling purpose, cannot remove the duty to bargain under PERA if the subject of the ordinance concerns the 'wages, hours or other terms and conditions of employment' of public employees."

Insurance policies are contracts to idemnify against contingent losses. *Nash v New York Life Ins Co,* 272 Mich 680, 682; 262 NW 441, 442 (1935).[4] An insurance policy is property and, as evidence of a debt or damages recoverable thereupon, is a chose in action. 44 CJS, § 223, p 932–933; 43 Am Jur 2d, § 197, p 254. However, it has been held in Michigan that a comprehensive hospital service and care certificate issued under Blue Cross is not a contract of insurance. *Michigan Hospital Service v Sharpe,* 339 Mich 357; 63 NW2d 638 (1954); see, generally, 43 Am Jur 2d, § 11, p 74. If not a contract of insurance, then Blue Cross is not property within the concerns of this case; likewise, Blue Shield. Nor is health insurance a "contractual service". As "shall" is "always man-

---

[4] *See, generally,* 44 CJS, Insurance, § 1, p 471 *et seq.;* 43 Am Jur 2d, Insurance, § 1, p 61 *et seq.*

datory and not merely directive" then contractual services are those so designated in Section 2-203.[5] We find that the procurement of health insurance is not "rental, repair, or maintenance" of "other city property".

The purpose of enactments providing for lowest bidding procedures is to prevent fraud and the temptation to fraud and collusion between officers letting contracts and persons taking them. See *Hannah v Fife,* 27 Mich 172, 177–178 (1873). In the present concern, we find no overriding need that the city take bids for health care insurance to prevent fraud or collusion. Moreover, the order specifying Blue Cross-Blue Shield came from a panel which included an arbitrator appointed by the Michigan Employment Relations Commission, an arbitrator chosen by the defendant, and an arbitrator designated by the plaintiff.

We hold that procurement of health care insurance does not fall within the provisions of the city charter and ordinances as set out. In so doing, we adhere to the fundamental rule of construction that courts are bound, whenever possible, to construe enactments so as to give them validity and reasonable construction, to reconcile seeming inconsistencies, and to arrive at a meaning which gives effect to all provisions. *In re Petition of State Highway Comm,* 383 Mich 709, 714–715; 178 NW2d 923, 926–927 (1970), and cases cited therein.

As the designation of a specific insurance carrier was, in this case, a mandatory subject of bargaining, the arbitration panel was not without jurisdic-

---

[5] This is consistent with *Smith v Sch Dist #6, Fractional, Amber Twp,* 241 Mich 366, 368–369; 217 NW 15 (1928), where it was held that "shall" and "may" should be given their ordinary and accepted meaning unless to so do would frustrate the legislative intent. *See, also, Transamerican Freight Lines, Inc v Quimby,* 381 Mich 149, 159; 160 NW2d 865, 869 (1968).

tion nor did it exceed its jurisdiction. As the subject matter of the dispute was not controlled by the local charter and ordinances, the charter and ordinances did not affect the question of health care coverage for the defendant. Therefore, the determination of the arbitration panel was not an invalid exercise of discretion. Judge Deneweth was entirely correct in ordering the enforcement of the arbitration award.

Affirmed. No costs, a public question being involved.

All concurred.