HOUGHTON LAKE EDUCATION ASSOCIATION v HOUGHTON
LAKE COMMUNITY SCHOOLS, BOARD OF EDUCATION

Docket No. 52784. Submitted May 11, 1981, at Lansing.—Decided
August 19, 1981. Leave to appeal applied for.

The Houghton Lake Education Association filed an unfair labor
practice charge with the Michigan Employment Relations Com-
mission (MERC) against the Houghton Lake Community
Schools, Board of Education relative to the board's failure to
bargain over the identity of a health insurance carrier for the
board's employees represented by the association. Following a
hearing, an administrative law judge ruled in favor of the
board. The association appealed to MERC, which reversed the
findings of the judge and ordered the board to negotiate the
identity of the carrier with the association. The board appeals.
*Held:*

The change in the administrator and policyholder of the
health insurance program has a material and significant effect
upon the conditions of employment within the school district
and as such is a mandatory subject for collective bargaining.
The policyholder's identity is not fundamental to the basic
direction of the district, and negotiation relative to the identity
does not impinge on the board's right to manage the district.

Affirmed.

1. LABOR RELATIONS — PUBLIC EMPLOYEES RELATIONS ACT — NA-
TIONAL LABOR RELATIONS ACT — JUDICIAL CONSTRUCTION —
STATUTES.

Michigan courts, in interpreting the public employees relations
act, may rely on legal precedents developed under the National
Labor Relations Act because the scope of bargaining under the
state act is patterned after that found under the federal act (29
USC 158[d], MCL 423.215; MSA 17.455[15]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 48A Am Jur 2d, Labor and Labor Relations § 1727.
[2-5] 48 Am Jur 2d, Labor and Labor Relations §§ 550-552.
   Bargainable or negotiable issues in state public employment labor
   relations. 84 ALR3d 242.

2. LABOR RELATIONS — COLLECTIVE BARGAINING.

Subjects for collective bargaining are classified as mandatory, permissive, and illegal.

3. LABOR RELATIONS — COLLECTIVE BARGAINING — MANDATORY SUBJECTS — GOOD FAITH.

Wages, hours, and other terms and conditions of employment are mandatory subjects for collective bargaining as well as any matter which has a significant impact on these subjects or which settles an aspect of the relationship between an employer and the employees, and the parties are required to bargain in good faith on these subjects, although they need not reach agreement.

4. LABOR RELATIONS — MANAGERIAL DECISIONS — COLLECTIVE BARGAINING.

Matters which involve management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security are not subject to collective bargaining.

5. LABOR RELATIONS — COLLECTIVE BARGAINING — HEALTH INSURANCE BENEFITS.

Health insurance benefits are mandatory subjects for collective bargaining, including decisions involving a change in the administrator, carrier, or policyholder of a medical insurance program where such change has a material or significant effect or impact upon conditions of employment.

*Levin, Levin, Garvett & Dill* (by *Wallace K. Sagendorph* and *Bradley T. Raymond*), for HLEA.

*Thrun, Maatsch & Nordberg, P.C.,* for respondent.

Before: R. M. MAHER, P.J., and ALLEN and CYNAR, JJ.

PER CURIAM. Houghton Lake Community Schools, Board of Education (board) appeals an order of the Michigan Employment Relations Commission (MERC) requiring it to bargain with Houghton Lake Education Association (association)

over the identity of a health insurance plan policy-holder. We affirm.

This dispute concerns the board's refusal to bargain over the Super-Med II medical insurance plan offered by the Michigan Educators' Support Special Service Association (MESSA). The Super-Med II plan was a group insurance plan under-written by the Equitable Life Assurance Society and administered by MESSA. MESSA developed insurance programs for the Michigan Education Asociation (MEA), to which the Houghton Lake Education Association belonged. Furthermore, MESSA and MEA had interlocking boards of directors. Under the Super-Med II plan, MESSA served two functions. First, it administered the insurance program for Equitable Life. Second, MESSA was the policyholder under the plan. According to MESSA, this dual responsibility had a profound effect upon benefits available to the employees. As the administrator, MESSA was responsible for paying all claims and establishing the claim appeal procedure. MESSA also was responsible for how the insurance contract was to be interpreted. For example, Super-Med II compensated the employee for doctor's fees which were customary and reasonable. When the contract was negotiated, the customary and reasonable fee could be set at $100 but later change by MESSA to $150, causing an increase in premiums. Also, MESSA was allowed to change benefits during the term of the collective bargaining agreement without renegotiating the contract with the school board. MESSA also controlled the disposition of premium refunds which were usually used to buy additional coverage for the employees. According to MESSA, any ambiguity in the insurance contract would be resolved in favor of the employee and would result in in-

creased cost to the board. Finally, the Super-Med
II plan cost $119 per month for full family mem-
bership while the Blue Cross & Blue Shield plan
cost $84.65 a month.

In the summer of 1979, the board began to
negotiate a new collective bargaining agreement
with the association, which represented the teach-
ers in the Houghton Lake schools. During the
initial negotiations, the board was informed that
the association's insurance and economic package
would be submitted later. On June 28, 1979, the
association proposed that the board accept the
MESSA Super-Med II plan as a replacement for
the Blue Cross & Blue Shield plan carried under
the previous collective bargaining agreement. The
board representatives failed to respond to this
demand.

During negotiations, the association representa-
tives claimed that Blue Cross & Blue Shield had
reduced benefits paid for emergency room services.
According to the board, Blue Cross & Blue Shield
was refusing to pay for services which were not of
an emergency nature or life threatening. The
board supported Blue Cross & Blue Shield's inter-
pretation of the contract. On August 28, 1979, the
association renewed its proposal that the board
accept MESSA's Super-Med II plan. The board's
chief negotiator informed the association that the
board was willing to negotiate over the contents of
an insurance plan but refused to negotiate over
the insurance carrier.

On September 4, 1979, the association filed an
unfair labor practice charge with MERC, claiming
that the board's refusal to bargain over the insur-
ance carrier was an unfair labor practice contrary
to MCL 423.210; MSA 17.455(10). After a hearing,
held on November 1, 1979, an administrative law

judge found for the board. The association took exception to the judge's findings, and MERC reversed the judge's findings on July 8, 1980. MERC ordered the board to negotiate over the indentity of the insurance policyholder.

The sole question submitted for our determination is whether the board, a public employer, violated the public employees relations act, when it refused to negotiate with the union regarding the indentity of the policyholder of a group health insurance plan.

MCL 423.215; MSA 17.455(15) states:

"A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession."

This statute is identical to § 8(d) of the National Labor Relations Act, 29 USC 158(d), and this Court looks to federal law when interpreting this section. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974), *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487, 490; 233 NW2d 49 (1975), *lv den* 395 Mich 756 (1975).

Matters which are proposed as categories or subjects for collective bargaining are classified as:

mandatory, permissive, and illegal. *Pontiac Police Officers Ass'n v City of Pontiac,* 397 Mich 674, 679; 246 NW2d 831 (1976), *National Union of Police Officers Local 502-M, AFL-CIO v Wayne County Board of Comm'rs,* 93 Mich App 76, 87; 286 NW2d 242 (1979). Mandatory subjects are those within the scope of "wages, hours, and other terms and conditions of employment * * *". MCL 423.215; MSA 17.455(15). *Pontiac, supra,* 679, *National Union of Police, supra,* 88. Any matter which has a significant impact on the subjects listed or settles an aspect of the relationship between employer and employee is a mandatory subject, except for management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security. *National Union of Police, supra,* 88, *Detroit Police Officers Ass'n,* 61 Mich App 492. The parties are required to bargain in good faith on mandatory subjects, although they need not reach agreement. *National Union of Police, supra,* 87.

Health insurance benefits are mandatory subjects for bargaining. *Allied Chemical & Alkali Workers of America, Local Union No 1 v Pittsburgh Plate Glass Co,* 404 US 157, 159; 92 S Ct 383; 30 L Ed 2d 341 (1971), *Bastian-Blessing, Division of Golconda Corp v National Labor Relations Board,* 474 F2d 49, 52 (CA 6, 1973). Whether the identity of an insurance carrier or administrator is a mandatory subject for bargaining has been discussed by a number of courts. In *Bastian-Blessing, supra,* the employer, without prior bargaining with the union, unilaterally terminated the employees' contributory group health insurance plan with Aetna Life Insurance Company and instituted a company self-insurance program. The Sixth Circuit Court of Appeals found that the insurance carri-

er's identity was a mandatory subject because the carrier's identity was inseparable from the benefits offered by the insurance plan. *Id.,* 54. This Court reached a similar result in *City of Roseville v Local 1614, International Ass'n of Firefighters, AFL-CIO,* 53 Mich App 547, 552-554; 220 NW2d 147 (1974).

In *Keystone Steel & Wire v National Labor Relations Board,* 606 F2d 171 (CA 7, 1979), the Court addressed the issue of whether the identity of the administrator of the medical insurance program was a mandatory subject for collective bargaining. Under the collective bargaining agreement between the company and the union, Keystone paid all health insurance benefits while Blue Cross & Blue Shield administered the program. During the term of the bargaining agreement, Keystone unilaterally decided to change the administration of the program to Metropolitan Life Insurance Company, which would save over $100,000 a year in administrative fees. The change in administrators affected the usual and customary fee allowances, did away with the Blue Cross labor consultant, increased the amount of paper work for recovery of claims, and stopped employees' eligibility for the Blue Cross & Blue Shield conversion plan which enabled employees to continue their Blue Cross & Blue Shield insurance plan after their employment was terminated. However, the change also meant that claims would be processed faster and requests for information answered more swiftly. The union objected by filing an unfair labor charge which claimed that the identity of the administrator was a mandatory subject for bargaining. The Court, affirming the decision of the National Labor Relations Board, found that the change of administrators was a

mandatory subject for bargaining because it had a material and significant effect or impact on the terms and conditions of employment. *Id.,* 179. Therefore, where a change in administrator or carrier has a material or significant effect or impact upon the conditions of employment, their identity becomes a mandatory subject for bargaining. The same reasoning should apply to the identity of the policyholder.

In this case, the Super-Med II plan has a profound effect upon the conditions of employment. First, if MESSA has a surplus from the premium, the surplus will be used to either stabilize the rate or increase the benefits. Furthermore, MESSA is responsible for interpretation of the insurance contract and will normally resolve an ambiguity in favor of the employees. MESSA is also responsible for establishing the customary and reasonable fee allowance. Finally, MESSA pays all claims and establishes the claims procedure which is favorable to the employees. Therefore, the change in administrator and policyholder has a material and significant effect upon the conditions of employment and is a mandatory subject for bargaining.

However, the board claims that the decision of who will be the policyholder is a managerial decision which is not a mandatory subject of bargaining. Management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security are not mandatory subjects for bargaining. *National Union of Police, supra,* 88. In this case, the policyholder's identity is not fundamental to the basic direction of the board's enterprise. Furthermore, it directly affects employment security. Therefore, requiring the board to bargain on

the identity of the policyholder does not impinge upon the board's right to manage the school district.

Affirmed.