CITY OF DETROIT v MICHIGAN COUNCIL 25, AMERICAN
FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES

Docket No. 58569. Submitted March 18, 1982, at Detroit.—Decided
July 19, 1982. Leave to appeal applied for.

The City of Detroit Common Council approved an ordinance
which changed the composition of the Boards of Trustees of the
Policemen and Firemen Retirement System and of the General
Retirement System. The change was made unilaterally without
prior bargaining with the affected labor organizations. The new
ordinance made three changes in the composition of the Board
of Trustees of the General Retirement System and two altera-
tions in the Board of Trustees of the Policemen and Firemen
Retirement System. Michigan Council 25, American Federation
of State, County and Municipal Employees, the Association of
Professional & Technical Employees, the Detroit Police Officers
Association, the Detroit Fire Fighters Association, Local 344,
International Association of Fire Fighters, and the Detroit
Police Lieutenants and Sergeants Association filed charges with
the Michigan Employment Relations Commission. The hearing
referee determined that the subject matter of the ordinance
was a mandatory subject of bargaining and that through the
ordinance the city had unilaterally made changes without
properly fulfilling its statutory obligation to meet and bargain
with the labor organizations. MERC affirmed the decision of the
hearing referee. The city appeals. *Held:*

The decision and order of MERC should be affirmed because
the composition of the Boards of Trustees of the General
Retirement System and the Policemen and Firemen Retire-
ment System of the City of Detroit is a mandatory subject of
bargaining. The powers of the boards of trustees are substantial
and have a significant effect upon the conditions of employ-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 48A Am Jur 2d, Labor and Labor Relations §§ 1770, 1772:
    Bargainable or negotiable issues in state public employment labor
    relations. 84 ALR3d 242.
    Right of public employees to strike or engage in work stoppage. 84
    ALR3d 336.

ment. They include the powers to determine whether employees are totally disabled as a result of their performance of city work so as to entitle them to the increased benefits provided under duty disability pensions. Similarly, the boards of trustees determine whether employees are totally disabled due to non-duty disability, entitling them to early and substantial pension benefits.

Affirmed.

1. LABOR RELATIONS — PUBLIC EMPLOYEES — PUBLIC EMPLOYMENT RELATIONS ACT.

The public employment relations act imposes upon public employers the duty to bargain with respect to wages, hours, and other terms and conditions of employment; subjects falling within these terms are called mandatory subjects of bargaining; Michigan has adopted a broad and expansive approach to determining whether a particular subject may be classified as a mandatory subject of bargaining; such an approach fosters protection of public employees' rights because those employees are forbidden to strike (MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

2. LABOR RELATIONS — PUBLIC EMPLOYEES — PUBLIC EMPLOYMENT RELATIONS ACT — TERMS AND CONDITIONS OF EMPLOYMENT.

The phrase "terms and conditions of employment" in the public employment relations act should be construed expansively because public employees in Michigan are forbidden to strike; courts should utilize a case-by-case approach in determining whether a given subject involves a term and condition of employment (MCL 423.215; MSA 17.455[15]).

*Sylvester Delaney,* Deputy Corporation Counsel, *William Dietrich,* Supervising Assistant Corporation Counsel, and *Frank W. Jackson* and *Kenneth G. King,* Assistants Corporation Counsel, for City of Detroit.

*Maurer & Kalls,* for Michigan Council 25, American Federation of State, County and Municipal Employees.

*Rock, Bove, Butler & McKnight,* for Detroit Police Lieutenants and Sergeants Association.

*Haggerty & Frank,* for Association of Professional & Technical Employees.

*Gregory, Van Lopik, Moore & Jeakle,* for Detroit Police Officers Association.

Before: J. H. GILLIS, P.J., and V. J. BRENNAN and N. J. LAMBROS,* JJ.

J. H. GILLIS, P.J. The City of Detroit appeals by right a decision of the Michigan Employment Relations Commission (MERC) which held that the composition of the board of trustees of two retirement systems of the City of Detroit is a mandatory subject of bargaining. We affirm.

In August, 1979, the City of Detroit Common Council approved an ordinance which changed the composition of the Boards of Trustees of the Policemen and Firemen Retirement System and of the General Retirement System. The change was made unilaterally without prior bargaining with the affected labor organizations.

Before the change the membership of the Board of Trustees of the General Retirement System included five elected employees, one elected representative of the retirees, and four city officials. This composition was established by city charter and practice, which had been incorporated as part of the terms of the last collective-bargaining agreement. The new ordinance made three changes in the composition of the board of trustees. Specifically, this new proposal added to the board, the Finance Director of the City of Detroit and the Personnel Director of the City of Detroit, thereby giving the city power to deadlock the board at any time. Additionally, the ordinance provided that city delegates could designate alternates, while no

---

* Circuit judge, sitting on the Court of Appeals by assignment.

such provision was made for employee representatives. Finally, the new provision made no change in the five-member quorum requirement, thus making it possible for five city delegates, or five city alternates, to conduct business without any employee representatives being present.

The Board of Trustees of the Policemen and Firemen Retirement System, prior to the ordinance, was composed of five city representatives and six elected employee representatives, three of whom were firemen and three of whom were policemen. The ordinance in question would alter the composition of this board in two respects. It would add an additional city representative to the board, the finance director, and it would give the city representatives the right to select an alternate should they not be able to attend a meeting of the board. The ordinance did not provide any equivalent procedure for the fire department or police department trustees to designate substitutes.

Charges were filed by the affected labor organizations with the MERC. On June 4, 1980, the hearing referee issued his decision and order in which he determined that the subject matter of the ordinance was a mandatory subject of bargaining and that through the ordinance the city had unilaterally made changes without properly fulfilling its statutory obligation to meet and bargain with the charging parties. On appeal to the commission, the city's exceptions to the hearing referee's order were found to be "uniformly without merit". The city has appealed to this Court.

The decision of the MERC found that the composition of the board of trustees of the retirement systems is a mandatory subject of bargaining. The city argues that the board of trustees' powers do not impact upon substantive conditions of employ-

ment, thus rendering the matter simply a permissive subject of bargaining. The distinction between permissive and mandatory subjects is important, for it determines whether or not the city's action here constitutes an unfair labor practice.

The public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* imposes upon public employers the duty to bargain with respect to "wages, hours and other terms and conditions of employment * * *". MCL 423.215; MSA 17.455(15). Subjects falling within these terms are called mandatory subjects of bargaining. *Houghton Lake Education Ass'n v Houghton Lake Community Schools, Board of Education,* 109 Mich App 1, 6; 310 NW2d 888 (1981). Michigan cases have adopted a broad, expansive approach to determining whether a particular subject may be classified as a mandatory subject of bargaining. *Local 1383, International Ass'n of Fire Fighters, AFL-CIO v City of Warren,* 411 Mich 642, 652; 311 NW2d 702 (1981). The approach fosters protection of public employees' rights, because those employees are forbidden to strike under § 2 of PERA, MCL 423.202; MSA 17.455(2). *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6, 27; 232 NW2d 278 (1975).

Determination of what are mandatory subjects of bargaining is done on a case-by-case basis. *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487, 490-491; 233 NW2d 49 (1975). The test generally applied is whether the matter has a significant impact upon wages, hours, or other conditions of employment, or settles an aspect of the employer-employee relationship. *Houghton Lake Education Ass'n, supra,* 6. See *Detroit Police Officers Ass'n, supra.*

The parties in this case agree that the retire-

ment systems are mandatory subjects of bargaining. See *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974). The City of Detroit argues, however, that the composition of the board of trustees is not a substantive term of the retirement plan, does not affect "wages, hours and other terms and conditions of employment", and thus is not a mandatory subject of bargaining. The crux of the city's argument is that the board of trustees does not have discretion to determine the amount of benefits nor the eligibility of potential recipients. The city characterizes the board's function as administrative or ministerial.

We have found no Michigan case dealing specifically with the composition of a board. However, several cases dealing with the identity or administrator of a health insurance program are instructive. In *Roseville v Local 1614, International Ass'n of Fire Fighters, AFL-CIO,* 53 Mich App 547; 220 NW2d 147 (1974), the parties entered into a collective-bargaining agreement which was silent as to the carrier from which health insurance coverage was to be obtained. The employees instituted compulsory arbitration proceedings, pursuant to PERA, on this issue. The employer argued, *inter alia,* that the designation of a carrier is an administrative decision and not the subject of a labor dispute.

On appeal, this Court first noted that health insurance is a mandatory subject of bargaining. It discussed federal cases which have dealt with identity of the carrier. See *Connecticut Light & Power Co v National Labor Relations Board,* 476 F2d 1079 (CA 2, 1973). It then determined that there was a sufficient interrelationship between the identity of the carrier and the benefits provided to require bargaining on the subject.

A similar issue was posed in *Houghton Lake Education Ass'n v Houghton Lake Community Schools, Board of Education, supra.* In that case, the existing collective-bargaining agreement designated Blue Cross and Blue Shield as the health insurance carrier. When negotiations for a new agreement began, the employee representative, Houghton Lake Education Ass'n, proposed that the health insurance be changed to the MESSA Super Med II plan. MESSA and the Michigan Education Association had interlocking boards of directors. MESSA administered the program, which was written by an insurance company, and MESSA was a policyholder under the plan. As administrator, MESSA was responsible for paying all claims and establishing the claims procedure. MESSA was also responsible for how the insurance contract was to be interpreted. According to MESSA, any ambiguity would be resolved in favor of the employees.

The board of education informed the employees that it was willing to negotiate over the contents of the insurance plan but refused to negotiate over the insurance carrier. Upon a finding by the MERC that this was a mandatory subject of bargaining, the board of education appealed.

In affirming the MERC decision, this Court stated:

"Therefore, where a change in administrator or carrier has a *material or significant effect or impact upon the conditions of employment,* their identity becomes a mandatory subject for bargaining. The same reasoning should apply to the identity of the policyholder." (Emphasis supplied.)

Applying this test to the facts before it, the Court concluded that the MESSA plan proposed by the

employees had a profound effect upon the conditions of employment. The reasons given were stated as follows:

"First, if MESSA has a surplus from the premium, the surplus will be used to either stabilize the rate or increase the benefits. Furthermore, MESSA is responsible for interpretation of the insurance contract and will normally resolve an ambiguity in favor of the employees. MESSA is also responsible for establishing the customary and reasonable fee allowance. Finally, MESSA pays all claims and establishes the claims procedure which is favorable to the employees. Therefore, the change in administrator and policyholder has a material and significant effect upon the conditions of employment and is a mandatory subject for bargaining."

In the case at bar, the powers of the boards of trustees are substantial and have a significant effect upon the conditions of employment. They include the power to determine whether employees are totally disabled as a result of their performance of city work so as to entitle them to the increased benefits provided under duty disability pensions. Similarly, the boards of trustees determine whether employees are totally disabled due to nonduty disability, entitling them to early and substantial pension benefits. The boards of trustees as well determine whether an employee's beneficiaries are entitled to accident death benefits for death while in city service and determine whether retirees on disability pension need reexamination or are subject to revocation of their pension if their physical condition has improved. Under specific provisions of the new city code, the boards of trustees also compute the city's contribution liability to the fund, for which the mayor and council must appropriate sufficient funds. Finally, the

boards of trustees determine the investment of funds, which in the long run determines the amount of benefits, amount of city contributions, and amount of employee contributions.

In *Houghton Lake,* the fact that the administrator of the health plan would interpret contract ambiguity and establish a claims procedure in a manner favorable to the employees was significant. Likewise, in the instant case, the composition of the boards of trustees, whether employee dominated versus an evenly divided board, would have a substantial impact upon many of the boards' decisions. Under these circumstances the composition of the Boards of Trustees of the General Retirement System and the Policemen and Firemen Retirement System of the City of Detroit is a mandatory subject of bargaining.

The city next claims that by the terms of collecitve-bargaining agreements the parties agreed to balanced representation upon the boards of trustees. The argument is without merit. A straightforward reading of the language in question reveals that it does not require equal representation. Rather, it provides only that if any changes are made, the result of those changes must be equal representation. The language is inapplicable to the case at bar.

The decision and order of the MERC is affirmed.