CITY OF MANISTEE v MANISTEE FIRE FIGHTERS
ASSOCIATION, LOCAL 645, IAFF

Docket No. 102611. Submitted August 9, 1988, at Grand Rapids.
Decided January 3, 1989.

The City of Manistee filed a petition with the Michigan Employ-
ment Relations Commission, alleging that the Manistee Fire
Fighters Association, Local 645, IAFF, had engaged in unfair
labor practices when, after engaging in protracted negotiations
and mediation with the city over a new contract, it withdrew
all tentative agreements, resubmitted its original proposals and
demanded arbitration. Following an evidentiary hearing, the
hearing officer found that it was not an unfair labor practice
for the union to bargain to an impasse and then take the issue
of increased pension benefits to arbitration, but that the union
had committed unfair labor practices by demanding arbitration
on the question of minimum manning levels and by withdraw-
ing all tentative agreements at the last negotiation session
before arbitration was demanded. MERC affirmed the hearing
officer's finding with respect to pension benefit issues, but
reversed the hearing officer's findings of unfair labor practices
arising out of the manning issue and the agreement with-
drawal question. Petitioner appealed.

The Court of Appeals held:

1. Since the record supports the determination that the
minimum manning question was inextricably intertwined with
the question of the safety of the fire fighters, the minimum
manning question was a mandatory subject of bargaining and
was a proper subject of the statutory arbitration.

2. The attempt by the city to include in the contract a
provision to permit the use of nonunion volunteer fire fighters
is a mandatory subject for bargaining, since the net effect of
such a proposal was to attempt to subcontract bargaining unit
work to nonunion members.

3. The question concerning the alleged problem concerning

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1201, 1208 et seq.
What constitutes unfair labor practice under state public employee
relations acts. 9 ALR4th 20.

pension benefits caused by the public approval provision of the city's prior charter was rendered moot by the amendment of the city charter.

4. The police and fire department compulsory arbitration act does not require good faith bargaining to impasse as a precondition to arbitration under that act. Accordingly, it was not an unfair labor practice to request such arbitration prior to reaching an impasse.

Affirmed.

1. LABOR RELATIONS — FIRE DEPARTMENTS — MINIMUM MANPOWER REQUIREMENTS — COLLECTIVE BARGAINING.

Minimum manning requirements for a city's fire department are mandatory subjects of collective bargaining if the minimum manning requirements are inextricably intertwined with issues related to the safety of the fire fighters.

2. LABOR RELATIONS — FIRE DEPARTMENTS — VOLUNTEER FIRE FIGHTERS — COLLECTIVE BARGAINING.

The question of a city's use of nonunion volunteer fire fighters who would do some of the work of union fire fighters is a mandatory subject of collective bargaining, since the use of volunteer fire fighters under such circumstance amounts to an attempt by the city to subcontract work done by members of the bargaining unit.

3. LABOR RELATIONS — FIRE DEPARTMENTS — COMPULSORY ARBITRATION — COLLECTIVE BARGAINING.

The police and fire department compulsory arbitration act does not require good faith bargaining to impasse as a precondition to arbitration under that act (MCL 423.231 et seq.; MSA 17.455[31] et seq.).

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *John H. Gretzinger*), for petitioner.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Alison L. Paton*), for respondent.

Before: HOLBROOK, JR., P.J., and MURPHY and C. O. GRATHWOHL,* JJ.

PER CURIAM. Petitioner, the City of Manistee,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

appeals as of right from an order of the Michigan Employment Relations Commission finding that respondent, the Manistee Fire Fighters Association, did not engage in unfair labor practices on two of the three charges levied against respondent by petitioner.

Petitioner and respondent had a collective bargaining agreement in effect from July 1, 1982, to June 30, 1985. Formal bargaining began in June, 1985. Difficulties in negotiations arose after numerous bargaining sessions. The parties differed on pension benefits and whether to include minimum on-duty manning requirements and a bargaining unit erosion provision in the new agreement. In December, 1985, the parties engaged in mediation. After that session respondent withdrew all tentative agreements and resubmitted its original proposal so that the last issue submitted would not be the only issue subject to arbitration.

In January, 1986, petitioner brought charges in the MERC against respondent for unfair labor practices. The hearing officer found that it was not an unfair labor practice for respondent to bargain to impasse and then to take to arbitration the issue of increased pension benefits. However, the hearing officer did find unfair labor practices in (1) respondent's request for arbitration over minimum manning and (2) respondent's withdrawal of all tentative agreements at the last negotiation session.

In July, 1987, the MERC reversed the hearing officer's decision on respondent's withdrawal of all tentative agreements before submitting to arbitration. On the minimum manning issue, the MERC determined that safety considerations had been raised and, on their face, the manning requirements involved safety issues. Therefore, the manning requirements were a mandatory subject of

bargaining, and it was not an unfair labor practice to break off negotiations and request arbitration over this issue. As for the bargaining unit erosion provision, the MERC held that it was a mandatory subject of bargaining because petitioner proposed to use volunteer fire fighters. Therefore, this was a term or condition of employment. The MERC adopted the hearing officer's decision that respondent did not commit an unfair labor practice in bargaining to impasse over the pension issue.

On appeal petitioner first contends that the MERC decision that provisions for minimum on-duty manning requirements and for bargaining unit erosion are mandatory subjects of bargaining is not supported by competent, material and substantial evidence. We disagree.

Findings made by the MERC are conclusive so long as they are supported by competent, material and substantial evidence on the record. Const 1963, art 6, § 28; MCL 423.216(e); MSA 17.455(16)(e). But where the decision of the MERC is premised upon an error of law, this Court is not constrained to uphold that decision. *Southfield Police Officers Ass'n v Southfield,* 162 Mich App 729, 732-733; 413 NW2d 489 (1987).

Mandatory subjects of bargaining under Michigan's public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* include "wages, hours and other terms and conditions of employment." MCL 423.215; MSA 17.455(15); *Detroit v Michigan Council 25, AFSCME,* 118 Mich App 211, 215; 324 NW2d 578 (1982), lv den 417 Mich 990 (1983). What constitutes a mandatory subject is determined on a case-by-case basis. *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487, 490-491; 233 NW2d 49 (1975), lv den 395 Mich 756 (1975), reconsideration den 396 Mich 989 (1976). "The test generally applied is whether the

matter has a significant impact upon wages, hours, or other conditions of employment, or settles an aspect of the employer-employee relationship." *Michigan Council 25, supra,* p 215.

Under Act 312 arbitration, MCL 423.231 *et seq.*; MSA 17.455(31) *et seq.*, an arbitration panel can only decide on proposals that are mandatory subjects; it may not decide on proposals that are permissible ones. *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v Center Line,* 414 Mich 642, 652; 327 NW2d 822 (1982). Accordingly, it is an unfair labor practice to insist to impasse on a permissible subject of bargaining and later submit that issue to arbitration. *Id.,* p 653. See also *Detroit Fire Fighters Ass'n, Local 344, IAFF v Detroit,* 96 Mich App 543, 545-546; 294 NW2d 842 (1980), lv den 411 Mich 861 (1981).

Minimum manning requirements for fire fighters have been held to be mandatory subjects of bargaining if the minimum manning requirement is related to the safety of the fire fighters and, therefore, is a term or condition of employment. *Hillsdale v Michigan State Fire Fighters Union Local 961,* 164 Mich App 627, 629; 418 NW2d 114 (1987); *Alpena v Alpena Fire Fighters Ass'n, AFL-CIO,* 56 Mich App 568, 575; 224 NW2d 672 (1974), lv den 394 Mich 761 (1975), overruled in part on other grounds *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 483, n 65; 294 NW2d 68 (1980), reh den 409 Mich 1101 (1980). In addition, this Court recently in *Trenton v Trenton Fire Fighters Union, Local 2701, International Ass'n of Fire Fighters,* 166 Mich App 285, 294-295; 420 NW2d 188 (1988), held that, where minimum manpower clauses are inextricably intertwined with safety issues, those clauses become mandatory subjects for bargaining.

The record in this case is replete with testimony

that the use of only two-man, on-duty shifts would hamper the ability to effectively and promptly respond to and fight fires. This, in turn, causes increased pressure, stress and fatigue on fire fighters. Similarly, rescue efforts with the use of the buddy system are jeopardized without a third man to watch over operation of the equipment and the supply of water. Without this third fire fighter, rescue attempts subject fire fighters to increased safety risks. The testimony also established that calling in additional help as needed does not remedy this situation, as the loss of the first few minutes of response time hinders the ability of fire fighters to control a fire and thereby serves to increase safety risks to fire fighters. Moreover, petitioner's own city manager admitted that safety considerations, as well as maintaining the size of respondent's unit, were considerations during bargaining. Therefore, the MERC decision that minimum manning requirements are a mandatory subject for bargaining is supported by competent, material and substantial evidence on the record.

Petitioner next argues that the provision for bargaining unit erosion is not a mandatory subject for bargaining. Petitioner sought to eliminate that provision in the new agreement so volunteer fire fighters could be utilized.

There is a duty to bargain over management's decision to subcontract bargaining unit work to nonunion members. This is a mandatory subject for bargaining under PERA. *Detroit Police Officers Ass'n v Detroit,* 428 Mich 79, 89-96; 404 NW2d 595 (1987). Because petitioner sought to bring in volunteers to perform bargaining unit work, it, in effect, attempted to subcontract the unit's work by using nonunion members to perform the same job as respondent's members. Therefore, this was a mandatory subject for bargaining. MERC's determina-

tion to this effect was sufficiently supported by the record.

Petitioner's next contention raised on appeal is moot. Petitioner had argued that its city charter, pursuant to the home rule cities act, gives its residents the right to vote on changes in its retirement plans for its employees. Petitioner cannot, therefore, bargain over pension rights unless such bargaining is subject to a vote of the city's electorate. Apparently, the provision requiring electorate approval of a change in an employee pension plan is no longer in the city charter, and, therefore, changes in the pension plan are no longer subject to voter approval. Nonetheless, we note that pension benefits are mandatory bargaining subjects under PERA. See *West Ottawa Ed Ass'n v West Ottawa Public Schools Bd of Ed,* 126 Mich App 306, 328; 337 NW2d 533 (1983), lv den 418 Mich 890 (1983). In addition, our Supreme Court in *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 67; 214 NW2d 803 (1974), held that there was no conflict between PERA and the home rule cities act. Therefore, the MERC was correct in affirming the hearing officer's determination that respondent did not commit an unfair labor practice by bargaining to impasse and then submitting to arbitration the issue of pension benefits.

Finally, petitioner contends that respondent's actions in withdrawing all tentative agreements with petitioner before going into Act 312 arbitration constituted a violation of its duty to bargain in good faith. Petitioner asserts that good-faith bargaining to impasse is a precondition to Act 312 arbitration and the hearing officer was therefore correct in determining that respondent failed to bargain in good faith. We disagree.

Petitioner acknowledges that it has already

sought this Court's ruling on this issue in a different forum. This Court in *Manistee v Employment Relations Comm,* 168 Mich App 422; 425 NW2d 168 (1988), clearly decided this issue contrary to petitioner's position. This Court held that the Legislature did not intend good-faith bargaining to impasse to be a prerequisite to Act 312 arbitration. *Id.,* p 428. The same facts were before the Court in that case as in the case at bar. Because that prior appeal involved the same set of facts, the same parties, and the same question of law, although arising from a different forum, the doctrine of law of the case applies. That is, where a prior ruling of the appellate court concerns the same question of law in the same case, the doctrine of law of the case applies and the prior ruling is controlling. See, e.g., *Johnson v White,* 430 Mich 47, 52-53; 420 NW2d 87 (1988), and *Smith v Elenges,* 156 Mich App 260, 262; 401 NW2d 342 (1986). Because the facts before the previous panel were the same as before this panel, petitioner is bound by the previous appellate decision. *Id.*

Affirmed.