MICHIGAN FRATERNAL ORDER OF POLICE v KENT COUNTY

Docket No. 103503. Submitted November 14, 1988, at Lansing. Decided January 18, 1989. Leave to appeal applied for.

The Michigan Fraternal Order of Police and the International Association of Fire Fighters petitioned the Employment Relations Commission to declare that the Kent County International Airport security officers and crash, fire and rescue equipment operators were each a group of employees to which the act providing for compulsory arbitration in labor disputes in police and fire departments applied. The Kent County Employees Union was permitted to intervene. MERC held that the act applied to the two groups. Kent County appealed.

The Court of Appeals *held:*

Employees of a public agency are entitled to treatment under the act providing compulsory arbitration in labor disputes in police and fire departments where the employees are subject to the hazards of police or fire fighting work and where the department-employer is a critical-service department having as its principal function the promotion of the public safety, order and welfare so that a work stoppage in that department would threaten community safety. The primary function of the county department of aeronautics is not the promotion of public safety, order and welfare nor would a work stoppage in the department threaten community safety.

Reversed.

LABOR RELATIONS — POLICE AND FIRE DEPARTMENTS — COMPULSORY ARBITRATION.

Employees of a public agency are entitled to treatment under the act providing compulsory arbitration in labor disputes in police and fire departments where the employees are subject to the hazards of police or fire fighting work and where the department-employer is a critical-service department having as its principal function the promotion of the public safety, order and welfare so that a work stoppage in that department would

REFERENCES
Am Jur 2d, Labor and Labor Relations §§ 1772-1774.
See the Index to Annotations under Labor and Employment.

threaten community safety (MCL 423.231 *et seq.*; MSA 17.455[31] *et seq.*).

*Finkel, Whitefield & Selik, P.C.* (by *Peter P. Sudnik*), for Michigan FOP.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Ronald R. Helveston* and *Alison L. Paton*), for International Association of Fire Fighters.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Jack R. Clary, John H. Gretzinger* and *Marshall W. Grate*), for Kent County.

Before: SHEPHERD, P.J., and GRIBBS and G. S. ALLEN,* JJ.

PER CURIAM. The County of Kent appeals from a decision by the Michigan Employment Relations Commission granting two groups of airport employees Act 312 status and authorizing an election in which each group could choose, as a separate bargaining unit, a representative for collective bargaining purposes. The employees work at Kent County International Airport as airport security officers (ASOS) and as crash, fire and rescue equipment operators (CFRS). We reverse.

MERC's findings of fact are to be upheld if supported by competent, material and substantial evidence on the whole record. *Mid-Michigan Ed Ass'n v St Charles Community Schools,* 150 Mich App 763, 767; 389 NW2d 482 (1986).

While all public employees are prohibited from striking by the public employment relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*, only those employees that fall within the scope of MCL

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

423.231; MSA 17.455(31) (Act 312) are entitled to binding arbitration of their interest disputes. Act 312 is intended to ensure against strikes by public employees who provide unique and essential services the disruption of which would jeopardize public welfare, order and safety.

In *Metropolitan Council No 23, AFSCME v Oakland Co Prosecutor,* 409 Mich 299, 335; 294 NW2d 578 (1980), a plurality of the Supreme Court set forth two conditions requisite to invocation of Act 312:

> First, the particular complainant employee must be subject to the hazards of police work . . . . Second, the interested department/employer must be a critical-service county department engaging such complainant employees and having as its principal function the promotion of the public safety, order and welfare so that a work stoppage in that department would threaten community safety.

In this case, the commission found that the two-pronged test from *Metropolitan Council* had been satisfied. The MERC decision can be reversed only if it is contrary to law or unsupported by competent, material and substantial evidence. *Metropolitan Council,* 409 Mich 330; Const 1963, art 6, § 28.

In this case, we believe the record supports the MERC's finding that the ASOs and CFRs employed by the county airport were critical service employees subject to the hazards of police and fire fighting work.

The ASOs were employed at the county airport as part of the security program designed to ensure the safety of persons and property on the airport premises in compliance with FAA regulations. To qualify for the position, ASOs are required to complete the mandatory 256 hours of police officer

training required by the State of Michigan for certification and to participate in firearm training twice a year. Additionally, ASOs are trained through the Federal Aeronautics Administration concerning methods used to hijack planes and carry weapons or bombs through security checkpoints. Approximately half of the ASOs employed at the county airport have emergency medical technician training. ASOs wear uniforms, carry firearms and are deputized by the county sheriff. They have full powers of arrest within the airport premises. There are ASOs on duty at the airport twenty-four hours a day.

CFRs are generally on duty at the airport from 6:00 A.M. until midnight. However, a CFR is required to stay on duty at the airport until all commercial air carriers have landed. Therefore, when there are flight delays, the hours of active duty may be extended. Persons with previous military or other experience in CFR operations and "EMT" or advanced first aid certification are given preference in hiring for CFR positions. CFRs are also expected to complete the sixty-six-hour phase one of the training required for all fire fighters. Additionally, CFRS receive a minimum of thirty days specialized on-the-job training to familiarize them with the airport facility and the equipment and vehicles used by the CFR unit. The CFRS use fire fighting methods and equipment specially designed to deal with the particular problems involved with fires at an airport. The airport is required to employ ASOs and CFRS in order to comply with FAA regulations and safety standards concerning minimum personnel and response time at airports utilized by commercial airlines. Although serious problems rarely arise at the Kent County International Airport, the potential for danger particular to security or fire fighting work

at an airport makes the ASOs and CFRs critical service workers subject to the hazards of police or fire fighting work.

However, we believe that MERC's finding on the second part of the *Metropolitan Council* test was incorrect:

> [T]he interested department/employer must be a critical-service county department engaging such complainant employees and having as its principal function the promotion of the public safety, order and welfare so that a work stoppage in that department would threaten community safety. [409 Mich 335.]

MERC noted in its opinion that thousands of people use the county airport each day and concluded,

> to interrupt even temporarily this essential method of travel would impinge upon the order and welfare of the community.

It is apparent from MERC's opinion that it considered only whether a work stoppage in this case would "impinge upon the order and welfare of the community." MERC did not go on to evaluate whether such a work stoppage "would threaten community safety," as is required under the *Metropolitan Council* test.

Although we agree that a shutdown of the airport would result in great inconvenience, we do not believe that the primary function of the county department of aeronautics is "the promotion of public safety, order and welfare" or that a work stoppage in that department "would threaten community safety."

In light of our decision that the ASOs and CFRs are not eligible for act 312 eligibility, we need not address the parties' remaining issues.

Reversed.