CITY OF DETROIT v DETROIT FIRE FIGHTERS ASSOCIATION, LOCAL 344, IAFF

DETROIT FIRE FIGHTERS ASSOCIATION, LOCAL 344, IAFF v CITY OF DETROIT

Docket Nos. 161019, 161587, 162114. Submitted February 15, 1994, at Detroit. Decided April 18, 1994, at 9:15 A.M. Leave to appeal sought.

The Detroit Fire Fighters Association, Local 344, IAFF, petitioned the Michigan Employment Relations Commission for compulsory arbitration pursuant to 1969 PA 312, MCL 423.231 *et seq.*; MSA 17.455(31) *et seq.*, of a labor dispute with the City of Detroit concerning several issues, including proposals by the union to compel the city to maintain a minimum of four fire fighters for each company and to provide each battalion chief with an aide. An arbitration panel appointed by the commission determined that the panel had jurisdiction, adopted the minimum-staffing proposal with a modification that excused the city from complying with the requirement under certain circumstances, and rejected all the other proposals.

.In a separate proceeding before the commission, the city charged the union with unfair labor practice under the public employment relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*, asserting that the issues submitted by the union for arbitration under Act 312 were not related to the safety of fire fighters and therefore not subject to arbitration. The city also petitioned the commission for unit clarification, alleging that certain members of the union were not entitled to the protections of Act 312 arbitration.

A hearing referee determined that the union had engaged in unfair labor practices by including certain members of the fire department's apparatus division in the unit for arbitration and by submitting for arbitration an issue that was not related to

REFERENCES

Am Jur 2d, Arbitration and Award §§ 9, 67, 68, 75, 76, 145; Labor and Labor Relations §§ 1759-1761, 1787, 1790, 1791.

Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees. 68 ALR3d 885.

the safety of fire fighters, i.e., the issue concerning aides for battalion chiefs. The referee ordered the exclusion of the apparatus division employees at issue and rejected the other charges of unfair labor practice. On review of the hearing referee's decision, the commission determined that the union had engaged in unfair labor practices by submitting for arbitration the issues related to minimum staffing and aides for battalion chiefs, and that the apparatus division employees at issue were not entitled to the protection of Act 312 arbitration because their services were not critical to public safety.

Both parties then sought relief in the Wayne Circuit Court. The city brought an action to vacate the arbitration award pursuant to MCL 423.242; MSA 17.455(42), asserting that the issues submitted for arbitration were not within the scope of Act 312 and that, even if they were, the award was not supported by competent, material, and substantial evidence. The union brought an action pursuant to MCL 423.240; MSA 17.455(4) to enforce the arbitration award and enjoin the city from failing to comply with the minimum-staffing requirement of four fighters for each company. The actions were consolidated, and the court, Kaye Tertzag, J., granted summary disposition for the union, ruling that the arbitration panel properly exercised jurisdiction over the issues submitted for arbitration and that the arbitration award was supported by competent, material, and substantial evidence.

Both parties appealed, the union appealing the decision by the commission that the union had engaged in unfair labor practices, and the city appealing the order of the Wayne Circuit Court granting summary disposition for the union in the consolidated actions related to the arbitration award. The appeals were consolidated.

The Court of Appeals *held:*

1. The issue of minimum staffing was related to or inextricably intertwined with the safety of the fire fighters and therefore was a proper subject of mandatory collective bargaining. The union did not commit an unfair labor practice in submitting this issue for arbitration, and the Michigan Employment Relations Commission's decision overturning the hearing referee's determination that the union had not committed an unfair labor practice by submitting the issue for arbitration is unsupported by substantial evidence and therefore must be reversed.

2. The commission did not err in determining that the services of the apparatus division employees in question were not critical to public safety and that those employees should be excluded from the unit for purposes of compulsory arbitration.

3. The Wayne Circuit Court did not err in rejecting the city's

contention that the arbitration panel was without jurisdiction or that the arbitration award was not supported by competent, material, and substantial evidence. The arbitration award is defective only to the extent that it states that issues of minimum staffing are, as a matter of law, mandatory subjects of collective bargaining. The circuit court order of summary disposition for the union is modified to direct the arbitration panel to amend its award insofar as it states that minimum-staffing issues are mandatory subjects of bargaining as a matter of law.

Commission decision and order affirmed in part and reversed in part; circuit court order affirmed as modified.

1. LABOR RELATIONS — COMPULSORY ARBITRATION — POLICE AND FIRE DEPARTMENTS — MUNICIPAL CORPORATIONS — JUDICIAL REVIEW.

An order of an arbitration panel conducting compulsory arbitration of a labor dispute involving a municipal police or fire department may be reviewed by a circuit court, the Court of Appeals, or the Supreme Court only where the panel was without jurisdiction or exceeded jurisdiction, the order is unsupported by competent, material, and substantial evidence on the whole record, or the order was procured by fraud, collusion, or other similar and unlawful means (MCL 423.242; MSA 17.455[42]).

2. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — JUDICIAL REVIEW.

On judicial review of a decision or order of the Michigan Employment Relations Commission, findings of fact by the commission are conclusive if they are supported by competent, material, and substantial evidence on the whole record; conclusions of law by the commission are subject to review regardless of the factual findings (MCL 423.216[e]; MSA 17.455[16][e]).

3. LABOR RELATIONS — FIRE DEPARTMENTS — MINIMUM STAFFING — COLLECTIVE BARGAINING.

Minimum staffing in a municipal fire department is a subject of mandatory collective bargaining where the issue is related to or inextricably intertwined with the safety of the fire fighters (MCL 423.215; MSA 17.455[15]).

4. LABOR RELATIONS — COMPULSORY ARBITRATION — POLICE AND FIRE DEPARTMENTS.

A police or fire department employee is entitled to the protections of the statute that provides for compulsory arbitration of labor disputes in municipal police and fire departments where the employee is engaged in or subject to the hazards of police work

or fire fighting and the employee's services are critical to the protection of the public (MCL 423.232; MSA 17.455[32]).

*Miller, Canfield, Paddock & Stone* (by *Leonard D. Givens* and *John H. Willems*), for City of Detroit.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Theodore Sachs*), for Detroit Fire Fighters Association.

Before: Reilly, P.J., and J.H. Gillis, Sr.,* and C.H. Stark,** JJ.

C. H. Stark, J. In this case, we are called to evaluate conflicting decisions of a hearing referee of the Michigan Employment Relations Commission, a subsequent decision of the MERC modifying the decision of the referee, and a decision of an arbitration panel assembled pursuant to MCL 423.231 *et seq.*; MSA 17.455(31) *et seq.* For the most part, the three decisions were based on similar records and related to the same issues.

In Docket No. 161019, the Detroit Fire Fighters Association (DFFA) appeals the November 17, 1992, MERC decision and order finding that the DFFA had engaged in unfair labor practices when it submitted permissive (as opposed to mandatory) subjects to arbitration. The order directed the DFFA to cease and desist from its attempt to submit those issues to arbitration. We affirm in part and reverse in part with regard to this portion of the appeal.

In Docket Nos. 161587 and 162114, the City of Detroit appeals the November 12, 1992, Wayne Circuit Court order denying its motion for sum-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1993-6.

** Circuit judge, sitting on the Court of Appeals by assignment.

mary disposition with regard to its action to set aside the May 28, 1992, arbitration award. Detroit also challenges the November 12, 1992, order on the ground that it improperly granted the DFFA's motion for summary disposition with regard to the DFFA's action to enforce the arbitration award. We affirm with respect to this portion of the appeal, but order that the arbitration award be modified as stated herein.

Because of the complex manner in which these appeals made their way to this Court, we believe it prudent to set forth a somewhat detailed factual account of the proceedings that occurred below.

### ACT 312 ARBITRATION PROCEEDINGS

On June 29, 1989, the DFFA filed a petition with the MERC for "Act 312" arbitration pursuant to MCL 423.231 et seq.; MSA 17.455(31) et seq.[1] Detroit objected to the Act 312 arbitration, claiming that the DFFA had persisted in taking matters to an impasse and submitted to arbitration issues that were merely permissive subjects of bargaining. Detroit also averred that the bargaining unit included members who were not eligible for Act 312 arbitration because they did not fit within the parameters of MCL 423.232; MSA 17.455(32). Despite Detroit's objections, the Act 312 arbitration proceedings went forward.

The MERC appointed Richard Kanner as impartial chairman of the arbitration panel. Detroit selected Mark Ulicny as its designee and the DFFA selected Mark Brewer. The panel received testi-

---

[1] The arbitration is referred to as "Act 312" arbitration because it came into existence under 1969 PA 312. Throughout the course of this opinion, we shall refer to the arbitration as "arbitration" or "Act 312 arbitration."

mony for twenty-five days regarding six issues.[2] The issues submitted by the DFFA were: (1) a proposal to compel Detroit to maintain a minimum of four fire fighters for each company in the city (minimum-staffing issue); (2) a proposal to preclude Detroit from reducing the number of companies then in existence in the city (minimum-companies issue);[3] (3) a proposal to increase the number of "tactical squads" within the city from six to nine squads; (4) a proposal to provide each battalion chief with an aide; and (5) a proposal to guarantee that a fire fighter who is temporarily assigned to perform duties within a higher classification will be classified at the higher classification during the assignment. Detroit's sole proposal submitted to arbitration related to the manner in which temporary vacancies were to be filled within the department.

The Act 312 arbitration panel rendered its award on May 28, 1992. As a threshold matter, the panel concluded that, contrary to the protestations of Detroit, it had jurisdiction to decide the pending issues.[4] The panel first concluded that a prior decision of the MERC vested it with jurisdiction.[5] The panel then rejected Detroit's claim that the

[2] Other issues initially presented to the arbitration panel were decided or settled before the final award.

[3] We note that there was also a separate proceeding in the MERC related to Detroit's closure of two fire companies in the city. In that case, the referee concluded that Detroit had the managerial discretion to close those companies. That decision was appealed to this Court by the DFFA and is not a part of this appeal. See Docket No. 149506. We express no opinion regarding that issue in this appeal.

[4] The DFFA's designee, Mark Brewer, concurred in the exercise of jurisdiction, but was of the opinion that Detroit had waived its jurisdictional complaints by failing to follow certain procedures. Detroit's designee dissented from the conclusion that the panel properly exercised jurisdiction.

[5] That decision was the July 25, 1990, decision and order of the MERC denying the DFFA's motion to dismiss the petition alleging unfair labor practice and Detroit's motion to enjoin the Act 312 arbitration proceedings.

minimum-staffing issue was wholly unrelated to the safety of the fire fighters and thus not subject to the jurisdiction of the panel. The panel noted that because it was denying the remaining DFFA proposals on the merits, the jurisdictional questions with respect to those proposals were moot.

The panel then turned to the issues before it and concluded that the minimum-staffing proposal had merit. The panel amended the DFFA's minimum-staffing proposal to reflect that, although Detroit was obligated to provide for four-member companies, there were certain conditions under which Detroit's failure to do so would be excused.[6] The panel denied the DFFA's minimum-companies proposal almost exclusively on the basis of principles of fairness and workability.[7] The panel then denied all other DFFA and Detroit proposals.

### WAYNE CIRCUIT COURT PROCEEDINGS

Following the May 28, 1992, Act 312 arbitration award, both parties turned to the Wayne Circuit Court. Detroit filed a complaint to vacate the award pursuant to MCL 423.242; MSA 17.455(42), essentially arguing that the issues were not within the jurisdiction of the Act 312 arbitration panel and, even if they were, the award was unsupported by competent, material, and substantial evidence. The DFFA filed an action pursuant to MCL 423.240; MSA 17.455(40) to enforce the award and enjoin Detroit from failing to provide the four-person minimum for each company. The cases were consolidated and submitted to the court under motions for summary disposition by the parties.

The court conducted a hearing on each party's motion on August 14, 1992. The court then issued

---

[6] Detroit's designee dissented from this portion of the award.

[7] The DFFA's designee dissented from this portion of the award.

an opinion on October 21, 1992, concluding that the Act 312 arbitration panel properly exercised jurisdiction over the issues presented and that the ultimate award relating to the minimum-staffing issue was supported by competent, material, and substantial evidence on the whole record. On November 12, 1992, the court entered an order directing Detroit officials to abide by and enforce the May 28, 1992, arbitration award. Detroit challenges this order on appeal in Docket Nos. 161587 and 162114.

### MERC PROCEEDINGS

On September 7, 1989, Detroit filed a charge of unfair labor practice with the MERC, asserting that the DFFA had engaged in unfair labor practices under the public employment relations act (PERA) by submitting the issues involved to the Act 312 arbitration proceedings described above. See MCL 423.216; MSA 17.455(16). In its charge, Detroit asserted that the issues were in no way related to the safety of the fire fighters and were therefore not within the jurisdiction of the Act 312 arbitration panel. On September 20, 1989, Detroit filed a unit clarification petition, alleging that there were certain members of the DFFA who were not entitled to the protections of Act 312 arbitration. The MERC appointed referee Joseph Bixler to conduct an inquiry into the charges.[8]

Referee Bixler conducted hearings on February 20, 1990, October 23-24, 1990, and February 4,

---

[8] At this point, it is important to note that the Act 312 arbitration proceedings and the MERC proceedings regarding the PERA charges were taking place during the same period. The DFFA attempted to prevent the MERC from pursuing the PERA charges because the Act 312 panel was already appointed, while Detroit attempted to enjoin the Act 312 arbitration hearings pending a decision by the MERC on the PERA charges. Neither the DFFA nor Detroit was successful.

1991. The parties agreed that the transcripts of the Act 312 arbitration proceedings and portions of a collateral MERC proceeding related to the closure of two companies would be admitted as part of the MERC record. On July 26, 1991, the record was closed after the parties submitted briefs. Before rendering a decision on the PERA petition, Referee Bixler retired. The case was then transferred to Referee Roy L. Roulhac. On July 9, 1992, Referee Roulhac issued a decision and recommended order on the record developed before Referee Bixler.

Referee Roulhac sustained Detroit's petition in part and dismissed it in part. First, the referee concluded that it was an unfair labor practice for the DFFA to include certain members of the Detroit Fire Department apparatus division (mostly mechanics and equipment service personnel) in the Act 312 arbitration unit. Thus, the referee ordered that the unit be clarified to exclude those members of the apparatus division that were not sworn, uniformed fire fighters. Second, the referee sustained Detroit's unfair labor practice charge with respect to the issue concerning aides for battalion chiefs, concluding that the issue did not relate to fire fighter safety or workload and was therefore improperly submitted to Act 312 arbitration. Finally, Referee Roulhac dismissed the charge of unfair labor practice relating to the minimum staffing for each company. The referee concluded that the issue affected fire fighter safety and was thus properly submitted to Act 312 arbitration.

Both the DFFA and Detroit filed exceptions to the decision and recommended order. The MERC subsequently issued a decision and order on November 17, 1992, concluding that the DFFA had engaged in unfair labor practices by submitting to arbitration the issues related to minimum staffing and aides to

battalion chiefs.[9] The MERC also concluded that Referee Roulhac improperly granted unit clarification. More specifically, although the MERC agreed with Referee Roulhac that certain members of the apparatus division were improperly included in the unit, the MERC concluded that the proper method of removing those members was by election and not by granting unit clarification. On appeal in Docket No. 161019, the DFFA claims that the MERC erred in reaching each of these conclusions.

### APPLICABLE STANDARDS OF REVIEW

Central to a resolution of this case are the standards of review to be applied at each level of the proceedings below. Because the record developed before the Act 312 arbitration panel is part of the record developed in the MERC, the standard by which we review those decisions is critical.

With respect to an Act 312 arbitration hearing, MCL 423.242; MSA 17.455(42) (Section 12), provides that orders of the arbitration panel are subject to judicial review in the circuit court, but only for the following reasons:

> [T]he arbitration panel was without or exceeded its jurisdiction; the order is unsupported by competent, material and substantial evidence on the whole record; or the order was procured by fraud, collusion or other similar and unlawful means.

In *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410; 294 NW2d 68 (1980), our Supreme Court stated that courts are obligated to apply the Section 12 standard when reviewing decisions of Act

---

[9] It is worth noting that the chairperson of the MERC panel that reviewed Referee Roulhac's decision and recommended order was former referee Joseph Bixler. Mr. Bixler was appointed as a commissioner following his retirement as a referee.

312 arbitration panels.[10] *Id.* at 480-483 (WILLIAMS, J). Thus, where the panel acted within its jurisdiction and the order is supported by competent, material, and substantial evidence and not procured through fraud, collusion, or other unlawful means, the circuit court and our Court must enforce the award. See *Hillsdale v Michigan State Fire Fighters Union Local 961,* 164 Mich App 627, 629; 418 NW2d 114 (1987). As stated by this Court and our Supreme Court, we may not reassess the wisdom of the arbitration panel or engage in a review de novo. *Detroit Police Officers Ass'n, supra* at 480; *Hillsdale, supra* at 629.

With respect to jurisdictional challenges to Act 312 arbitration proceedings, the panel may only decide those issues that are mandatory subjects and, absent an agreement of the parties, may not decide proposals that are merely permissive. *Manistee v Manistee Fire Fighters Ass'n,* 174 Mich App 118, 122; 435 NW2d 778 (1989). In view of the public policy behind expeditious resolution of disputes between police or fire departments and municipalities, the Act 312 arbitration panel may exercise its jurisdiction independent of the MERC with respect to charges of unfair labor practice. *Metropolitan Council No 23, Local 1277, AFSCME, AFL-CIO v Center Line,* 78 Mich App 281, 284; 259 NW2d 460 (1977).

[10] This is so, despite the recent comments of one scholar suggesting that, as a general matter, we should review the *circuit court* decision to determine whether the court properly applied the substantial-evidence test, rather than directly reviewing the agency record to determine whether the order was supported by competent, material, and substantial evidence. See LeDuc, *Michigan Administrative Law,* 10 Cooley L Rev 511, 589 (1993). See also LeDuc, Michigan Administrative Law, § 9:49, ch 9, pp 67-69. While we agree in principle with Professor LeDuc's comments regarding the unwise use of our judicial resources in providing the same scope of review as applied in the circuit court, we are bound by our Supreme Court's interpretation of the statutory review of an Act 312 arbitration panel's decision. See *Detroit Police Officers, supra.*

With regard to MERC decisions, the appeal is directly to this Court and is governed by MCL 423.216(e); MSA 17.455(16)(e). Findings by the MERC with respect to questions of fact are considered conclusive if supported by competent, material, and substantial evidence on the whole record. *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority,* 437 Mich 441, 450; 473 NW2d 249 (1991); *Southfield Police Officers Ass'n v Southfield,* 433 Mich 168, 175; 445 NW2d 98 (1989). As our Supreme Court stated, an appellate court may review the law, regardless of the factual findings of the commission. *Southfield, supra* at 175. This standard of review comports with the minimum constitutional scope of judicial review of administrative decisions. *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121; 223 NW2d 283 (1974). The findings of the referee are part of the record and are entitled to consideration when being reviewed. *Id.* at 127.

It is with these foundational principles in mind that we now turn to the specific questions raised by each party in these appeals.

DOCKET NO. 161019

In this portion of the appeal, we are asked by the DFFA to review the decision of the MERC with respect to allegations by Detroit of unfair labor practice. Specifically, the DFFA alleges that the MERC decisions regarding issues of minimum staffing and exclusion of the apparatus division members from the unit were unsupported by the evidence and were based on erroneous legal conclusions. While we agree with respect to the minimum-staffing issue, we disagree with respect to the unit membership issue. Accordingly, we affirm in

part and reverse in part the November 17, 1992, decision and order of the MERC.

The MERC concluded that the DFFA committed an unfair labor practice when it submitted the minimum-staffing issue to arbitration. The MERC concluded that the minimum-staffing issue was not "inextricably intertwined" with either safety or workload so as to bring it within the mandatory bargaining obligations of the employer. The MERC so concluded because it was of the opinion that the safety of fire fighters depended not on the number of men at the scene, but on the manner in which the fire fighters were deployed.

Pursuant to MCL 423.215; MSA 17.455(15), a public employer is required to engage in collective bargaining. *Southfield, supra* at 177; *Jackson Community College Classified & Technical Ass'n, MESPA v Jackson Community College,* 187 Mich App 708, 712; 468 NW2d 61 (1991). However, it is an unfair labor practice to insist on submitting a nonmandatory subject to Act 312 arbitration. *Manistee, supra* at 122. What constitutes a mandatory subject of bargaining is decided case by case. *Southfield, supra* at 178; *Jackson Community College, supra* at 712. Any matter that has a significant effect on wages, hours, or other conditions of employment is subject to mandatory bargaining. *Id.* at 712-713. It is well established that where a staffing issue is related to or inextricably intertwined with the safety of the unit member, the issue is subject to mandatory bargaining. *Manistee, supra* at 122; *Trenton v Trenton Fire Fighters Union, Local 2710, IAFF,* 166 Mich App 285, 294-295; 420 NW2d 188 (1988); *Alpena v Alpena Fire Fighters Ass'n, AFL-CIO,* 56 Mich App 568, 575; 224 NW2d 672 (1974), overruled in part on other grounds *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 483, n 65; 294 NW2d 68 (1980).

It is true, as Detroit points out in its appeal from the Act 312 arbitration award, that a minimum-staffing proposal is subject to arbitration where the issue is "inextricably intertwined" with the safety of a unit member. *Trenton, supra* at 295. However, in *Manistee,* this Court also stated that where the staffing requirement is "related" to safety, it becomes a subject of mandatory bargaining. *Manistee, supra* at 122. In *Trenton,* this Court was attempting to determine whether all staffing issues are, as a matter of course, subject to mandatory arbitration, or whether the issue is only subject to arbitration where a decision would affect unit-member safety. See *Trenton, supra* at 294. This Court concluded that where the staffing issue is "inextricably intertwined" with safety, it becomes a mandatory bargaining issue. *Id.* at 294-295. This Court then, in the context of reviewing the MERC's conclusion that the staffing issue affected safety, reviewed the conclusion as one of fact under the substantial-evidence test. *Id.* at 295. Thus, where a minimum-staffing issue is inextricably intertwined with the safety of fire fighters, it is not an unfair labor practice to submit the issue to Act 312 arbitration.

In this case, we are persuaded that the MERC improperly overturned the ultimate conclusion of its referee that the minimum-staffing issue in this case was sufficiently intertwined with safety so as to be subject to arbitration. As in *Detroit Symphony Orchestra (DSO),* we are wary of the MERC's act of disturbing the finding of fact by the referee, even though it was clearly supported by the record. See *DSO, supra* at 126. Like our Supreme Court in *DSO,* we are persuaded that the MERC did not give due deference to the review conducted by the referee, in particular with respect to the findings of credibility. *Id.*

Our Supreme Court adopted the following comments of the United States Supreme Court in addressing the MERC's review of decisions by its referees:

> "We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. *We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion.* The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial.' " [*Id.* at 127, quoting *Universal Camera Corp v NLRB,* 340 US 474, 496-497; 71 S Ct 456; 95 L Ed 2d 456 (1951). Emphasis in original.]

Under the facts of this case, it was the MERC referee who conducted a substantial review of the record that was developed in the MERC and Act 312 arbitration proceedings. Moreover, because there was a substantial credibility contest regarding the manner in which the minimum-staffing issue would affect the safety of the fire fighters, the findings and report of the referee become more significant.

In the course of the hearings concerning Act 312 arbitration and unfair labor charges under the PERA, the testimony revealed that the minimum-

staffing proposal was both inextricably intertwined with and significantly related to the safety of the fire fighters. As noted by Referee Roulhac in his decision and recommended order, the four-person minimum is the standard recommended by the National Fire Protection Association. The referee further noted that the testimony of Detroit's own witnesses supported the conclusion that the minimum-staffing proposal at issue affected safety. In particular, Referee Roulhac noted that the testimony of Harold D. Watkins, chief of fire operations, and Paul Garrison, chief of training, supported the conclusion that fire fighters were routinely expected to fight fires and make rescues using an interior attack method. These same witnesses testified that an attempt to conduct such an attack with less than four persons would endanger the safety of the fire fighters.

In addition, expert witnesses John O'Hagan (for Detroit),[11] Frank Cruthers (for Detroit), and John Devine (for the DFFA), offered testimony indicating that the minimum-staffing issue affected the safety of the unit members. Each of these witnesses testified that there were certain procedures that could not be conducted safely with less than four fire fighters. Notwithstanding this testimony, the MERC concluded:

> The foregoing conclusion [Referee Roulhac's conclusion that the minimum-staffing proposal affected fire fighter safety] however does not establish that a proposal requiring the Employer [Detroit] to staff each company with at least four men per shift would achieve the Union's proposed safety objective. The safety of firemen is not determined by the number of men at a fire scene, but

[11] O'Hagan's testimony was received by Referee Nora Lynch in the context of the MERC proceedings related to the closure of two companies and was admitted pursuant to stipulation of the parties.

how they are deployed and the risks to which they are exposed because of what they are required to do. The Union's minimum-manning proposal is not a mandatory subject of bargaining.

The fact that the minimum-staffing proposal may not necessarily achieve the DFFA's proposed safety objective has little relevance to whether the proposal is a mandatory subject of bargaining. The MERC did not make specific references to the record to support its conclusion that safety depended on deployment, nor did the MERC specifically reject the findings of the referee or the testimony of the witnesses that supported the referee's conclusions.

We are persuaded that the MERC's conclusion that the minimum-staffing issue is unrelated to safety is unsupported by competent, material, and substantial evidence on the whole record. Just as in the *DSO* case, the MERC made conclusory findings that were entirely contrary to those made by the referee who had the opportunity to evaluate the witnesses, conduct an in-depth examination of the voluminous record, and "live with" the case while it was developed.[12] *DSO, supra* at 126. While we cannot say that there is a total absence of evidence to support the MERC conclusion that the minimum-staffing issue in this case does not affect safety, we conclude that the evidence is significantly less substantial in view of the credibility contest at issue and the overwhelming support for the referee's conclusions. See *id.* at 127.

We therefore hold that the "critical finding" of the MERC regarding the minimum-staffing proposal

[12] We recognize that Referee Roulhac did not actually have the opportunity to observe the demeanor of the witnesses because the testimony was mostly before the Act 312 arbitration panel and Referee Bixler. However, the demeanor of the witnesses is just one of several factors that affect a determination of credibility and, having reviewed those determinations made by Referee Roulhac, we are persuaded that they are sound.

and its relation to the safety of the fire fighters was unsupported by substantial evidence. See *id.* Accordingly, the MERC order finding that the DFFA engaged in an unfair labor practice by submitting the issue to Act 312 arbitration and further ordering the DFFA to refrain from submitting the issue in the future is reversed.

Next, the DFFA challenges that part of the MERC decision and order that relates to the unit clarification petition. Specifically, the DFFA claims that the MERC erred in concluding that certain members of the apparatus division were not "critical service employees" for purposes of Act 312 arbitration. We disagree.

MCL 423.232; MSA 17.455(32) identifies the groups or individuals entitled to the protections of Act 312 arbitration. The determination of an appropriate bargaining unit is a question of fact, reviewed under the substantial evidence test articulated earlier in this opinion. *Police Officers Ass'n of Michigan v Grosse Pointe Farms,* 197 Mich App 730, 735; 496 NW2d 794 (1993). The purpose of Act 312 arbitration is to ensure against strikes by public employees who provide essential services, the disruption of which would jeopardize the public welfare, order, and safety. *Michigan Fraternal Order of Police v Kent Co,* 174 Mich App 440; 436 NW2d 690 (1989). In order to come within the act, the employee must be engaged in or subject to the hazards of police work or fire fighting, and also must be an employee whose services are critical to the protection of the public. *Metropolitan Council No 23, AFSCME v Oakland Co Prosecutor,* 409 Mich 299, 335; 294 NW2d 578 (1980); *Police Officers Ass'n of Michigan v Lake Co,* 183 Mich App 558, 562; 455 NW2d 375 (1990); *Capitol City Lodge No 141, FOP v Ingham Co Bd of Comm'rs,* 155 Mich App 116, 118; 399 NW2d 463 (1986).

Having reviewed the record, we conclude that the MERC's conclusion that the services of the apparatus division employees are not critical to public safety is supported by competent, material, and substantial evidence on the whole record. Although it is true that some of the apparatus division employees engage in repairs at the scene of a fire, there is nothing in the record to indicate that a strike by the employees would adversely affect public safety. Rather, the evidence showed that, in the event of a strike, general mechanics who are not DFFA members but also work in the division would be capable of filling the void. Thus, the conclusion that the employees were not eligible for Act 312 arbitration is supported by the record.

In Docket No. 161019, the November 17, 1992, decision and order of the MERC is affirmed in part and reversed in part. That portion of the order directing the DFFA to cease and desist from submitting the issue of minimum staffing for each company to Act 312 arbitration is hereby vacated. In all other respects, the order is affirmed.

### DOCKET NOS. 161587 & 162114

In this portion of the appeal, Detroit challenges the November 12, 1992, Wayne Circuit Court order denying its motion for summary disposition and granting the same to the DFFA with respect to enforcement of the May 28, 1992, Act 312 arbitration award. We affirm in part and modify the order in part.

Detroit first claims that the arbitration panel erred in denying the DFFA's proposals regarding minimum companies and aides to battalion chiefs without first determining whether those issues were within the jurisdiction of the panel. However,

inasmuch as Detroit prevailed on the merits of those proposals, and inasmuch as the panel did not decide the jurisdictional issue, Detroit is not an aggrieved party such that relief would be necessary. By not expressly concluding that the issues related to minimum companies and aides to battalion chiefs were within its jurisdiction, the arbitration panel limited the implications of its conclusions to this case and this record. Had the panel expressly concluded that the issues were within its jurisdiction, Detroit's argument might be deserving of consideration. However, because the issue was not decided below, and because the award was in Detroit's favor, we see no need to address the issue in this Court.[13]

Detroit next argues that the arbitration panel erred in concluding, *as a matter of law,* that the minimum-staffing issue is a mandatory subject of bargaining. It is true that the panel stated in its award that it believed the issue of minimum staffing to be a mandatory bargaining issue as a matter of law. That statement is, as Detroit argues, contrary to law. In *Trenton, supra,* this Court stated that "where minimum manpower issues are inextricably intertwined with safety issues, they become mandatory bargaining subjects." *Id.* at 294-295. The obvious implication is that where a minimum-staffing issue is not intertwined with safety or otherwise within the parameters of MCL 423.215; MSA 17.455(15), the issue is not a mandatory subject of bargaining. Thus, where an employer or employee shows that a

---

[13] To the extent that Detroit claims that the panel implicitly took jurisdiction, we disagree. The panel expressly indicated that it was not deciding the arbitrability of the issues because it was denying the proposals on their merits. While we may not necessarily have decided the issues in the same fashion, and while it may be true that the panel should have decided the jurisdictional aspect of the issues first, any error is harmless.

minimum-staffing issue has no relation to safety or other conditions expressed in the statute, the issue is not a mandatory subject of arbitration. To the extent that the instant award suggests otherwise, we disagree with that position and order it modified accordingly.

Detroit next argues that the Act 312 arbitration panel erred in taking jurisdiction of the minimum-staffing issue because its conclusion that the issue was related to safety was improper. Specifically, Detroit argues that the issue of minimum staffing is inherently a managerial decision that, as a matter of policy, is to be left to the discretion of the municipality. While we agree in principle with Detroit, under the facts of this case, on the record presented, we disagree.

In *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v Center Line,* 414 Mich 642, 661-662; 327 NW2d 822 (1982), our Supreme Court stated that while the decision to lay off a public employee is, as a general principle, left to the discretion of the government, the effect of that decision may make the issue subject to arbitration. In that case, our Supreme Court expressly acknowledged that the layoff clause advanced by the union did not "involve" safety. *Id.* at 663. Rather, the Court recognized that the main rationale for the clause was to prevent retaliatory layoffs of police officers. *Id.* at 664. Thus, the Court concluded that the layoff proposal was not a mandatory subject of bargaining.

Detroit asserts that the mandatory bargaining requirement in the public sector is "universally recognized as subject to preemption by managerial prerogative." Such an assertion overstates the case. It may be true that, in certain instances, the bargaining requirement is subject to managerial preemption. However, where such disputes involve

those issues articulated in the statute or within the limited exceptions recognized by the cases, that managerial prerogative must give way. Thus, where the issue involves the safety of the fire fighter, the managerial prerogative is limited by the duty to submit to Act 312 arbitration. See *Alpena, supra.*

In this case, the Act 312 arbitration panel concluded that the minimum-staffing proposal advanced by the DFFA was linked to the safety of the fire fighters and thus within its jurisdiction as a mandatory subject of bargaining. The panel also concluded that the proposal had merit and deserved to be adopted, subject to certain modifications. As we concluded in the context of Docket No. 161019, the MERC record contained a significant amount of evidence to support that conclusion in the context of the MERC decision. With the exception of a few witnesses, the testimony admitted at the Act 312 arbitration hearings was identical to that presented in the MERC proceedings. Accordingly, because we are persuaded that there was competent, substantial, and material evidence to support the findings of the Act 312 arbitration panel, the trial court properly granted summary disposition in favor of the DFFA in the context of its action to enforce the award. See MCL 423.242; MSA 17.455(42); *Detroit v DPOA, supra* at 480.

Detroit also claims that the arbitration award is inherently inconsistent because the panel excused the obligation to provide the minimum staffing under certain situations. We do not agree. The panel excused Detroit's obligation to provide the minimum four-person company where the circumstances were such that absenteeism was unusually high or where the city did not have sufficient notice that the minimum would not be met. We do not believe it was unreasonable for the panel to

amend the provision to excuse Detroit's obligation to provide the minimum staffing where it is not directly responsible for the deficiencies in staffing and where Detroit did not have sufficient time to correct the deficiency. Rather, the amendment was a realization that, under certain conditions, Detroit's failure to meet the minimum-staffing provision would be unintentional and unavoidable.

For its final argument, Detroit claims that the panel failed to properly consider the "costs" to the city of complying with the proposal. We disagree. The panel very specifically articulated its findings with respect to the costs that would be incurred by Detroit. The panel noted that Detroit's budget already provided for a minimum of four persons in each company. The panel further concluded that any additional costs incurred were outweighed by the merits of the safety issue and the other factors. While Detroit may disagree with the conclusion of the panel insofar as its analysis of costs is concerned, it is beyond question that the panel considered the costs and found them to be already accounted for or otherwise outweighed by the safety concerns.

In Docket Nos. 161587 & 162114, the November 12, 1992, order of the Wayne Circuit Court is affirmed insofar as it obligates Detroit to comply with the minimum-staffing provisions announced in the May 28, 1992, Act 312 arbitration award. The order should be modified to direct the Act 312 arbitration panel to amend its award insofar as it stands for the proposition that minimum-staffing issues are, as a matter of law, mandatory subjects of bargaining.

Affirmed in part, reversed in part, and modified consistent with this opinion. We do not retain jurisdiction.