*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT BRIAN THOMAS RUEE ADAMS,

        Plaintiff-Appellant,

v

AMANDA LYNN SKARDOUTOS, JOHN THOEL,
MELISSA THOEL, ARTHUR FEYERS, PATRICIA
FEYERS, MICHAEL LONG, JASON ELMORE,
COREY WIGGINS, and JOHANNA CAREY,

        Defendants-Appellees.

UNPUBLISHED
February 13, 2025
10:11 AM

No. 369392
Wexford Circuit Court
LC No. 22-030412-NO

Before: RIORDAN, P.J., and O'BRIEN and GARRETT, JJ.

PER CURIAM.

Plaintiff Robert Brian Thomas Ruee Adams appeals as of right the trial court's final order entering default judgment against various defendants and closing this case. On appeal, plaintiff only challenges the trial court's earlier grant of summary disposition in favor of defendant Michael Long pursuant to MCR 2.116(C)(7), which dismissed him from the case.[1] In particular, plaintiff argues that the trial court erred by ruling that defendant, the police chief and sole police officer for the Manton Police Department, was entitled to governmental immunity under the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.*, for failing to report suspected child abuse or neglect to the state as required by the Child Protection Law (CPL), MCL 722.621 *et seq.* We affirm.

## I. FACTS

On July 26, 2022, plaintiff filed his complaint against the defendants, alleging that in April 2017, plaintiff, a 13-year-old minor child, was residing at the Green Mill Motel with his 11-year-old minor brother and mother, Amanda Lynn Skardoutos. One day that month, Skardoutos was

---

[1] For ease of reference, Michael Long will hereinafter be referred to as the singular "defendant."

driving to Cadillac with plaintiff and his brother when defendant effectuated a traffic stop and arrested her.[2] After taking Skardoutos into custody, defendant directed plaintiff and his brother to walk back to the motel despite having actual or constructive knowledge that Skardoutos was the only responsible adult for the brothers. Then, the day after the arrest, defendant brought McDonald's food to the brothers at the motel. Skardoutos ultimately remained in police custody for about a week, during which time the minor children had no adult supervision while residing at the Green Mill Motel.

On May 2, 2017, defendant received information indicating that Skardoutos was possessing marijuana and involved in the transfer of prescription drugs at the motel. Defendant forwarded this information to the county prosecutor. However, defendant did not report suspected child abuse or neglect to the state, see MCL 722.623, despite the fact that he had knowledge that the brothers were unsupervised for about a week and subsequently were in the presence of possible illegal drug activity. Several days later, Skardoutos manufactured a marijuana product with butane gas and placed it in the refrigerator. A few hours after she did so, plaintiff opened the refrigerator, which caused the marijuana product to create a substantial fire giving him severe burns.

In Count I, plaintiff alleges premises liability against the owners and possessors of the motel; in Count II, plaintiff alleges negligence against the same owners and possessors; and in Count III, plaintiff alleges a violation of the CPL against defendant and three county prosecutors. Specifically, with regard to Count III, plaintiff alleges that "[b]ecause of his failure to comply with his mandatory reporting requirement, Defendant Long is liable for any damages suffered by Plaintiff pursuant to MCL 722.633(1)." Plaintiff added that to the extent that his claim in Count III is barred by governmental immunity under *Jones v Bitner*, 300 Mich App 65; 832 NW2d 426 (2013), "the holding of that case should be overturned as statutorily and/or constitutionally infirm."

Defendant then moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8). Defendant argued that because he was the chief of police for the Manton Police Department, he was the highest appointive executive official of a level of government and thus entitled to absolute immunity under MCL 691.1407(5). Defendant alternatively argued that he was entitled to individual governmental immunity under MCL 691.1407(2)(a) to (c) because he satisfied all three statutory requirements for that immunity. Defendant emphasized that under *Jones*, "the mandatory reporting statute does not provide an exception to the general statutory rule of governmental immunity for individual governmental employees."

In his response, plaintiff argued that absolute and individual governmental immunity were unavailable to defendant because he acted outside the scope of his authority by failing to report suspected child abuse or neglect. In other words, plaintiff argued that because defendant had a statutory duty under the CPL to report suspected child abuse or neglect, and because he violated that statute, he did not satisfy the requirement for governmental immunity that he act "within the scope of his or her . . . authority." See MCL 691.1407(2)(a) and (5). As plaintiff stated, "[b]ecause Defendant Long was operating outside of his authority by choosing to ignore his obligations as a

---

[2] It was subsequently established during these proceedings that Skardoutos was arrested because she had an outstanding warrant.

mandatory reporter, he is not entitled to the protections of the GTLA." Plaintiff further asserted that he, not defendant, was entitled to summary disposition under MCR 2.116(I)(2).

The trial court ruled in defendant's favor pursuant to MCR 2.116(C)(7) and reasoned that it was required by *Jones* to conclude that defendant acted within the scope of his authority under MCL 691.1407 when he failed to report suspected child abuse or neglect, but that *Jones* also required the court to give plaintiff an opportunity to amend his complaint to state a claim for gross negligence that would not be subject to governmental immunity.

In March 2023, plaintiff filed an amended complaint alleging that, in relevant part, defendant was liable for gross negligence because he "abandon[ed] Plaintiff BRIAN ADAMS on the side of a highway without the care and supervision of his mother . . . ." Defendant moved for summary disposition of that claim as well, and the trial court granted that motion. Eventually, the trial court closed this case in December 2023 by entering a default judgment against three other defendants in the amount of about $10.3 million.

On appeal, plaintiff only argues that the trial court erred by ruling that defendant is entitled to governmental immunity under *Jones*. Plaintiff does not challenge the trial court's ruling concerning his subsequent gross-negligence claim, nor does plaintiff raise any arguments with regard to the remaining defendants.

## II. STANDARD OF REVIEW

"The applicability of governmental immunity is a question of law that this Court reviews de novo on appeal." *Beals v Mich*, 497 Mich 363, 369; 871 NW2d 5 (2015) "This Court also reviews de novo a trial court's determination regarding a motion for summary disposition." *Id*. "Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by immunity granted by law. . . . The reviewing court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Id*. at 370 (cleaned up). "If the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether the claim is barred by immunity is a question for the court to decide as a matter of law." *Id*. (quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff argues that defendant acted outside the scope of his authority when he allegedly violated the CPL by failing to report suspected child abuse or neglect and, as a result, the trial court erred by ruling that he is entitled to governmental immunity under the GTLA. We disagree.

*Background Law*

"The GTLA . . . affords broad immunity from tort liability to governmental agencies and their employees whenever they are engaged in the exercise or discharge of a governmental function." *Beals*, 497 Mich at 370. MCL 691.1407 of the GTLA provides, in relevant part:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and

employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

\* \* \*

(5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

\* \* \*

(8) As used in this section:

(a) "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

With regard to MCL 691.1407(2)(b), while the statute refers to "governmental agency," the actual inquiry involves the individual him- or herself. See *Ray v Swager*, 501 Mich 52, 62; 903 NW2d 366 (2017) ("There is no dispute regarding whether defendant acted within the scope of his authority as a governmental employee for the school or whether he was engaged in the exercise or discharge of a governmental function."). Further, with regard to MCL 691.1407(2)(c), "when assessing whether a governmental employee was 'the proximate cause' of the plaintiff's injuries, a court must determine whether the defendant's conduct was 'the one most immediate, efficient, and direct cause of the injury.' " *Id*. at 65 (citation and ellipses omitted). "[B]ecause proximate cause is concerned with the foreseeability of consequences, only a human actor's breach of a duty can be a proximate cause." *Id*. at 72. Finally, with regard to MCL 691.1407(5), "a chief of police, as head of the police department, qualifies as the highest appointive executive official of a level of government." *Petipren v Jaskowski*, 494 Mich 190, 204 n 32; 833 NW2d 247 (2013).

In *Odom v Wayne Co*, 482 Mich 459; 760 NW2d 217 (2008), our Supreme Court set forth the following steps to apply when an individual defendant raises the defense of governmental immunity to a negligence tort:

(1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MCL 691.1407(5).

(2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

(3) If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

(a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage. [*Id*. at 479-480.]

Turning to the CPL, "[t]he [CPL] outlines various requirements regarding the reporting and investigation of suspected child abuse." *Lavey v Mills*, 248 Mich App 244, 251; 639 NW2d 261 (2001). At the time relevant to this case,[3] MCL 722.623(1)(a) of the CPL provided, in relevant part:

(1) An individual is required to report under this act as follows:

(a) A physician, dentist, physician's assistant, registered dental hygienist, medical examiner, nurse, person licensed to provide emergency medical care, audiologist, psychologist, marriage and family therapist, licensed professional counselor, social worker, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher, *law enforcement officer*, member of the clergy, or regulated child care provider who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect. [Emphasis added.]

Reporting under the CPL is mandatory, not discretionary. See *People v Cavaiani*, 172 Mich App 706, 715; 432 NW2d 409 (1988) ("While [a psychologist] is free to decide that the

---

[3] The CPL was amended in 2022 by 2022 PA 47. Those amendments are not relevant for the purposes of this case. Thus, we quote the version of the CPL that was effective in 2017, when the events at issue occurred.

victim's allegations are untrue for purposes of rendering professional treatment, he is not free to arrogate to himself the right to foreclose the possibility of a legal investigation by the state.").

MCL 722.633(1) of the CPL provides as follows:

> A person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure.

In *Jones*, a law-enforcement officer used an informant to purchase morphine from the mother of a young child. *Jones*, 300 Mich App at 69-70. Apparently, the officer was aware of the fact that the mother had both a child in the household and access to morphine, but the officer did not report suspected child abuse or neglect. *Id*. at 70. The child subsequently died from ingesting morphine, and her personal representative sued the officer for violating the CPL. *Id*. The trial court denied the officer's motion for summary disposition under the GTLA, reasoning that the personal representative's claim "was subject to the 'damages proximately caused by' standard of MCL 722.633(1), not the stricter 'the proximate cause' standard of MCL 691.1407(2)(c)." *Id*. at 71 (emphasis omitted). This Court disagreed, explaining as follows:

> MCL 691.1407 was amended in 1986 to provide governmental immunity for individual governmental employees. The CPL was enacted before 1986, and the Legislature has repeatedly made minor amendments to the CPL after 1986. We conclude that the mandatory reporting statute does not provide an exception to the general statutory rule of governmental immunity for individual governmental employees. The Legislature is presumed to be aware of the consequences of its use or omission of statutory language and the effect of new laws on all existing laws. In spite of its knowledge regarding the GTLA, the Legislature has not amended the mandatory reporting statute to clearly provide that it abrogates the later-enacted governmental immunity statute. A more recently enacted law has precedence, especially when the statute is both the more specific and the more recent.
>
> * * *
>
> [I]n order for defendant to be liable under the mandatory reporting statute, her conduct must have been grossly negligent and the proximate cause of Ava's death.
>
> The record reveals that Ava's mother, Kelly Ann Jones, was convicted of involuntary manslaughter following Ava's death. It was alleged that Kelly Ann Jones either intentionally administered a lethal amount of morphine to Ava or allowed Ava to come into contact with morphine pills and then failed to seek assistance when she realized that Ava had taken some of the pills off a nightstand. From the limited record before us, it appears that only Kelly Ann Jones's acts or omissions were the proximate cause of Ava's death. Thus, it follows that defendant's alleged failure to report could not have been the proximate cause of Ava's death and that plaintiff's claim is barred by immunity granted by law. . . . [*Id*. at 76-78 (citations omitted).]

*Analysis*

-6-

In this case, plaintiff alleged in his original complaint that defendant was liable for violating the CPL under the standards ordinarily governing such actions, without regard to governmental immunity. Specifically, plaintiff asserted that because the CPL requires a law-enforcement officer to report suspected child abuse or neglect to the state, see MCL 722.623(1)(a), it follows that defendant here acted outside the scope of his authority by not reporting the suspected child abuse or neglect of plaintiff to the state. As a result, plaintiff argues, defendant is not entitled to individual governmental immunity or absolute immunity. See MCL 691.1407(2)(a) (providing that, among other requirements, a defendant is entitled to individual governmental immunity when the defendant is acting or reasonably believed that he is acting "within the scope of his or her authority"); MCL 691.1407(5) (providing that a high-level defendant is entitled to absolute governmental immunity when "he or she is acting within the scope of his or her judicial, legislative, or executive authority").[4] Plaintiff also asserted that to the extent that *Jones* suggests otherwise, it was wrongly decided. In response, defendant argued that under *Jones*, he acted "within the scope of his or her authority" for the purposes of MCL 691.1407(2)(a) and, by extension, that he acted "within the scope of his or her judicial, legislative, or executive authority" for the purposes of MCL 691.1407(5).

On appeal, plaintiff does not directly assert, as he did in the trial court, that *Jones* was wrongly decided. Nor does he ask this Court to convene a conflict panel. Instead, he merely implies that *Jones* was wrongly decided because it only addressed MCL 691.1407(2)(c) and did not address MCL 691.1407(2)(a) or (b). In other words, plaintiff implies that *Jones* was wrongly decided because *Jones* implicitly suggests that a law-enforcement officer acts within the scope of his or her authority for the purposes of MCL 691.1407(2)(a) when he or she decides not to report suspected child abuse or neglect. As plaintiff observes, the general rule—at least in the context of a mandamus action—is that when a governmental official or employee does not have discretion regarding whether to take a particular action, "the decision not to act is outside the scope of the authority granted by statute." *Mercer v City of Lansing*, 274 Mich App 329, 333; 733 NW2d 89 (2007). In *Mercer*, this Court explained:

> [A]n action for mandamus addresses a lack of conduct or a disengagement from the exercise or discharge of a governmental function. And while it might be said that a decision not to act is itself the exercise of authority, that is true only if discretion is vested in the governmental body or employee to decide whether action is appropriate. The essence of mandamus is that there is a legal duty to act. Therefore, the decision not to act is outside the scope of the authority granted by statute. [*Id*.]

We acknowledge that plaintiff presents a reasonable argument that *Jones* relied upon faulty reasoning. To be entitled to governmental immunity, a defendant must satisfy all three requirements of MCL 691.1407(2)(a) to (c). See *Odom*, 482 Mich at 479-480. However, *Jones*

---

[4] Plaintiff argues that, for the same reason, defendant was not "engaged in the exercise or discharge of a governmental function" for the purposes of MCL 691.1407(2)(b). Plaintiff again raises that argument on appeal. For ease of discussion, the 'scope of authority' argument will be considered under MCL 691.1407(2)(a), with the understanding that the argument applies with equal force to MCL 691.1407(2)(b) as well.

simply concluded that the defendant-officer was entitled to governmental immunity because she satisfied MCL 691.1407(2)(c), that "[t]he officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage." *Jones* did not address whether the defendant-officer satisfied MCL 691.1407(2)(a) or (b), which respectively involve "the scope of his or her authority" and "the exercise or discharge of a governmental function," although the obvious implication of *Jones* is that the defendant-officer did satisfy MCL 691.1407(2)(a) and (b). As plaintiff observes, defendant here had a statutory duty to report suspected child abuse or neglect, see MCL 722.623(1)(a), but failed to do so and, as a result, it is arguable that he acted outside the scope of his authority as a police officer, see MCL 691.1407(2)(a), or as a high-level executive official, see MCL 691.1407(5).

This logic has some intuitive appeal. However, it is not necessarily true that a police officer, or any other governmental employee or official, loses the protections of governmental immunity simply because he or she violated a statutory duty. For example, if a statute provides that "[a]n individual who appears to be incapacitated in a public place shall be taken into protective custody by a law enforcement officer," an officer may be immune from liability under the GTLA even if the officer fails to do so. See *Hurncz v Hetfield*, unpublished per curiam opinion of the Court of Appeals, issued March 30, 1999 (Docket No. 204096). Or, if a statute provides that a county has a duty to repair construction defects on a roadway, the county may be immune from liability under the GTLA despite failing to do so. See *Sokolowski v Macomb Co*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2013 (Docket No. 311661).[5]

Accordingly, it is unclear as to whether *Jones* was correct by implicitly deciding that a defendant-officer's failure to report suspected child abuse or neglect constitutes "acting within the scope of his or her authority" for the purposes of MCL 691.1407(2)(a).[6] In any event, because plaintiff does not argue that this Court should overrule *Jones*, the resolution of this appeal is straightforward. *Jones* implicitly held that when a law-enforcement officer learns about suspected child abuse or neglect in the course of his or her duties but does not report it to the state, the failure to report is "acting within the scope of his or her authority" for the purposes of MCL 691.1407(2)(a).[7] By the same measure, *Jones* implicitly held that the failure to report also constitutes "engag[ing] in the exercise or discharge of a governmental function" for the purposes of MCL 691.1407(2)(b).

---

[5] In addition, the trial court used an interesting analogy during the hearing on defendant's motion when the court asked plaintiff whether the failure of a police officer or ambulance driver to activate the emergency lights during an emergency, contrary to a statute requiring the lights to be activated, would render his or her conduct outside the scope of his or her authority for the purposes of governmental immunity.

[6] To be precise, MCL 691.1407(2)(a) uses the broader language, "acting *or reasonably believes* he or she is acting within the scope of his or her authority." (Emphasis added.)

[7] Otherwise, if this holding was not implied by *Jones*, there appears to be no obvious reason why *Jones* would have concluded that the plaintiff's claim was "barred by immunity granted by law." See *Jones*, 300 Mich App at 78.

The facts show that defendant learned about the suspected child abuse or neglect of plaintiff and his brother, i.e., the fact that the brothers were left unsupervised at the motel and/or the fact that Skardoutos subsequently engaged in possible illegal drug activity at the motel, in the course of his police duties. In other words, defendant was acting within the scope of his authority and was engaged in the exercise or discharge of a governmental function when he learned about the suspected child abuse or neglect but did not report it to the state. Although defendant could have— and possibly should have—reported those concerning facts to the state, the fact that he failed to do so nonetheless satisfies MCL 691.1407(2)(a) and (b) under *Jones*.[8]

Further, with regard to MCL 691.1407(2)(c), plaintiff does not argue that defendant was grossly negligent or "the proximate cause" of his injuries. Even assuming that defendant was grossly negligent by failing to report the suspected child abuse or neglect to the state, he was not "the proximate cause" of plaintiff's injuries because Skardoutos herself was "the proximate cause." In other words, "'the one most immediate, efficient, and direct cause of the injury" to plaintiff was Skardoutos and her decision to place the potentially dangerous marijuana product in the refrigerator that evening. The proximate cause was not any act or omission by defendant days earlier. See *Ray*, 501 Mich at 65 (quotation marks and citation omitted). Thus, defendant satisfies MCL 691.1407(2)(c), as plaintiff cannot show that defendant was "the proximate cause" of his injuries. See *Jones*, 300 Mich App at 78.

Accordingly, for these reasons, the trial court correctly concluded that defendant was entitled to individual governmental immunity under MCL 691.1407(2). Further, for the same reasons, defendant was entitled to absolute immunity under MCL 691.1407(5) because, as the highest appointive executive official of the police department, see *Petipren*, 494 Mich at 204 n 32, he acted "within the scope of his . . . executive authority." Plaintiff's argument to the contrary— that failing to comply with a statutory duty renders an act or omission by a governmental employee or official 'outside the scope of his or her authority' under *Mercer*—is debatable but cannot afford plaintiff relief in this appeal.

---

[8] Plaintiff contends that even if defendant acted within the scope of his authority by telling the brothers to return to the motel after arresting Skardoutos, and by referring the report of suspected illegal drug activity to the county prosecutor, he nonetheless did not act within the scope of his authority by bringing McDonald's food to the brothers the day after the arrest. At this point, plaintiff suggests, defendant was statutorily required to report suspected child abuse or neglect to the state but was not protected by his governmental employment.

This is an unreasonably narrow understanding of a police officer's duties. While police officers generally are charged with enforcing the law, see MCL 92.4, they also have broader duties to promote public welfare. See generally, *Mich Fraternal Order of Police v Kent Co*, 174 Mich App 440, 444; 436 NW2d 690 (1989). Indeed, echoing this broader duty, "Protect and Serve" is a common police slogan. Thus, a police officer is acting within the scope of his or her authority both when performing an arrest and when providing general assistance to the public.

Should it wish, our Legislature may amend the CPL or otherwise legislate on this issue to avoid the scenario before us in this matter repeating in the future.

## IV. CONCLUSION

Defendant did not act outside the scope of his authority when he allegedly violated the CPL by failing to report suspected child abuse or neglect and, as a result, the trial court did not err by ruling that he is entitled to governmental immunity under the GTLA. Therefore, we affirm.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Kristina Robinson Garrett